## SPARKS *v.* STATE.

### [74 South. 123, Division B.]

1. HOMICIDE. *Participation in crimes. Proof of conspiracy.*
   Where on the trial of a defendant for murder there was ample evidence to show he was a joint actor and active participant in the shooting, to make him liable as a joint actor in the killing, regardless of whether or not he fired the fatal shot; in such case proof of a conspiracy was not necessary to convict him.

2. HOMICIDE. *Dying declaration. Competency.*
   Where, during the shooting, deceased told one of the defendants not to shoot any more because he had already killed him, and after such declaration, deceased in response to an inquiry as to who shot him, accused the defendant of shooting him, upon the trial of the other defendant the latter statement was not competent as a dying declaration for either party.

3. HOMICIDE. *Dying declaration. Admissibility.*
   While a dying declaration is admissible on behalf of a defendant accused of murder as well as for the state, it is not admissible for either unless the proper predicate for its admission is laid.

4. HOMICIDE. *Dying declaration.*
   Because of the lack of the sanctity of an oath and the absence of the opportunity of cross-examniation before a dying declaration can be received as evidence, it must be shown by clear proof that at the time, there was, on the part of the deceased, a settled belief of impending death and the absence of all hope, however slight, of recovery. It is not necessary that he should have stated such belief nor on the other hand, is his mere statement thereof conclusive as to its existence.

APPEAL from the circuit court of Tippah county.
HON. J. L. BATES, Judge,
Dan Sparks was convicted of murder and appeals. The facts are fully stated in the opinion of the court.

*Spight & Street* for appellant.

The testimony shows conclusively, and it is nowhere denied, that immediately after the deceased was shot and before the firing of the second shot which missed him,

the deceased was heard to exclaim: "Brumley, don't shoot any more, you have killed me," and "he has killed me." This testimony was admitted because it was a part of the *res gestae*, but it served the further purpose of laying the predicate for the admission of dying declaration to come later. After the deceased had walked a few steps and fell by the side of the tree where he died, Elma Cox, unwittingly no doubt, further strengthened the predicate by saying that she heard him declare: "Lord, they have killed me." Any one of these three declarations was a sufficient predicate, and this is further strengthened by the testimony of Dr. Ford as to the character and location of the wound in the region of the heart, and his certainty that the wound was necessarily a fatal one. It is true that Elma Cox testified that the deceased didn't live more than three minutes, but this cannot be true, because Dr. Ford states that a messenger was sent for him at his home and that the deceased lived five or ten minutes after he got to him, and his estimate of the time is that he lived twenty or thirty minutes after being shot.

Counsel for the appellee, in his brief, says: "There is some doubt as to whether a proper predicate had been laid to admit the dying declaration." In *Smith* v. *The State,* 62 So. 864, the Alabama supreme court in delivering the opinion found in the last paragraph on the first column, page 869, say this: "After deceased had been shot he staggered and was helped into the drug store immediately at hand where he died within a few minutes. As he lay upon the floor he said, 'boys, he has killed me.' The nature of his wound, the form of the statement, and the absence of any expression of hope were sufficient to warrant an inference that deceased realized his condition, and spoke under a sense of impending dissolution. In truth, the statement was nothing more than an expression of his appreciation of the fact that he was wounded to death." The court held that his statement was properly admitted as a dying declaration.

In another Alabama Case, *Parker* v. *The State,* 65 So. 90, in which the court, in speaking of the statement, made by the wounded man, who died about a week after being shot, said at the time of making the statement that was admitted as a dying declaration, the deceased said: ''That he was shot very badly (seriously) and that he had been killed,'' shows a sufficient predicate to justify the court in admitting the dying declaration. *Kirklin* v. *The State,* 53 So. (Ala.), page 253; *Greer* v. *The State,* 47 So. (Ala.) 300.

None of these cases are stronger than the one at bar, and were all used against the defendant and each resulted in a conviction of murder.

Counsel for the appellee does not contend that dying declarations are not to be admitted in behalf of a defendant on trial for murder, and this is so well settled by the authorities as cited in our original brief that we do not think it necessary to argue this phase of the case any further.

It is urged by counsel for the appellee that a part of the testimony showing the statements of the deceased at the very time of the shooting was before the jury and that, therefore, the admission of the dying declaration as given in the testimony of Roy Cameron and Luna Flake, both of whom are disinterested witnesses, would not have changed the result of the trial. But this cannot be true as a matter of law. Deceased evidently believed at the moment of being shot that he was mortally wounded as evidenced by the declaration, ''Don't shoot any more, you have killed me,'' and ''He has killed me,'' but after undertaking to walk and going only a few steps, and falling at the tree where he died a few minutes afterward, the even more impressive declaration ''Lord, they have killed me'' was a complete confirmation of his first impression that he was mortally wounded. If the proper predicate was laid, as we insist it was, then his declaration as to who shot him was clearly competent, and neither the trial court nor this court could undertake to pass upon the credibility of the

witness testifying to the fact, but it was solely one for the jury. *Jackson* v. *State,* 94 Miss. 83; *Marley* v. *State* (Miss.), 69 So. 210.

*Earle H. Floyd,* Assistant Attorney-General for the state.

It is manifest that a conspiracy existed between Brumley and the âppellant to kill the deceased. To warrant the admission of such threats or declarations it is only necessary that it be shown that they were made as a result of a conspiracy, express or implied while together pursuing an unlawful end. The death of the deceased followed quickly on the heels of this threat or declaration and it is a most logical and lawful inference that the said remark was directed towards the deceased. *Gillum* v. *State,* 62 Miss. 547.

The next and perhaps most strongly argued of alleged errors relates to the action of the court in refusing to admit certain statements purporting to have been made by the deceased after he was shot.

Charlie Rogers, testified that after Brumley shot the first time, the deceased threw his hand on his side and said: "Brumley you have killed me, don't shoot any more." Whereupon the deceased turned around and fell on his hands and received the second shot. An examination of the record shows that this statement or declaration was not objected to but that the testimony in regard to subsequent interrogation as to who shot him was objected to and excluded. There is some doubt as to whether a proper predicate had been laid to admit this statement as a dying declaration in as much as, beyond the mere statement he had killed him, it was not shown that the deceased realized that he was *in extremis,* but be that as it may, it is manifest that the exclusion of this testimony was not prejudical as we have the same thing from the lips of others. It is not shown that he was conscious at the time or knew what he was saying. It is true that it appears from the testimony of other witnesses that he was then

conscious at that time but it would have been proper for the witness to the dying declaration to state whether or not he was conscious, as consciousness in the case of such fatal wounds comes and goes within the space of a few minutes.

Again it is shown that the witness Luna Flake, a relative by marriage of the appellant, stated that he heard the deceased say between shots, "He has killed me." The state objected to his testifying as to the questions he put to the deceased as he lay upon the ground when it is alleged that the deceased told him that Jess Brumley did the shooting.

It is to be noticed that the testimony of the two witnesses testifying to the dying declarations vary considerably. One stating that between the shots the deceased exclaimed: "He has killed me!" It is clear that the jury were thoroughly impressed with the purpose of the said testimony and that it having come from the defense's witnesses was intended to exonerate the appellant.

The next assignment of error relates to the refusal of the court to admit the testimony relative to certain statements purported to have been made by Brumley which established his own guilt and exonerated the appellant.

It is alleged that Brumley made a statement after the shooting in which he exonerates the appellant. Jesse Sparks tells of this meeting with Brumley some time that night after the shooting and from the question, which owing to an objection was not answered, we are left to infer that he would testify that Brumley admitted that he did the shooting. However, this would be pure conjecture as counsel did not get into the record what they offered to prove by this witness in answer to the question. It is well settled that the declarations of one conspirator, after the murder is inadmissible on the trial of the other. *Simmons* v. *State*, 61 Miss. 243.

The appellant had a fair trial and under proper instructions from the court the jury brought in its verdict

of guilty, and I submit that there is nothing in the record to warrant anything but an affirmance of the case.

ETHRIDGE, J., delivered the opinion of the court.

Dan Sparks and Jess Brumley were jointly indicted in the circuit court of Tippah county for the murder of one Lon Clark in May, 1916. There was a severance granted, and Sparks, the appellant, was placed on trial and convicted of murder and sentenced to the penitentiary for his natural life.

It was the theory of the appellant below that Brumley did the killing, and he contends that there was no conspiracy to connect him with the act of Brumley; also contends that the court below erred in refusing to admit the dying declaration alleged to have been made by Clark between the time of the shooting and his death. The proof for the state tended to show that Sparks did the shooting, and we think there is ample evidence to show he was the joint actor and active participant in the shooting to make him liable as a joint actor in the killing, regardless of whether or not he fired the fatal shot. The proof of a conspiracy in such a case would not be necessary to connect him with the killing.

It appears from the evidence for the appellant that, during the shooting, the deceased cried out to Brumley not to shoot him any more as he had already killed him, or words to that effect. It was sought to prove on behalf of the defendant that subsequent to the shooting, and after this declaration, some one asked Clark who shot him, and he responded that Brumley did. While a dying declaration is admissible on behalf of the defendant as well as on behalf of the state, we think the proof in this case fails to make the alleged dying declaration competent for either party.

The rule for determining the admissibility of this class of evidence is clearly stated in *Bell* v. *State,* 72 Miss. 507, 17 So. 232; and it is incumbent on a party relying on a dy-

, ing declaration to prove the same according to the standard laid down in that case regardless of whether it be offered by the defendant or by the state. It requires these requisites to make the evidence admissible as evidence at all, because of the lack of the sancity of an oath and the absence of the opportunity of cross-examination, so well calculated to develope the truth as to the entire transaction.

We think there is no error in the instructions by the court or in the admission or exclusion of evidence, and the case is, accordingly, affirmed.

*Affirmed.*