EALY *v.* STATE.

[91 South. 417. No. 21971.]

1. HOMICIDE. *Preliminary examination held to show competency of dying declarations.*

   Where several dying declarations of a deceased are offered in evidence, a statement by the declarant, to one who was endeavoring to encourage him to believe that he would live, that "I don't know, I am feeling mighty bad," will not be construed as an expression of hope of recovery, where all the other testimony offered on the preliminary examination as to the competency of such dying declarations clearly shows that the declarant had a settled conviction that he was going to die, and that such declarations were made under the realization and solemn sense of impending death.

2. HOMICIDE. *Failure to submit question of manslaughter not error, where state's evidence, if believed, established murder, and defendant's evidence, if believed, established self-defense.*

   Where, in a trial for murder, the evidence for the state, if believed, makes a clear case of murder, and the evidence for the defendant, if believed, establishes a clear case of self-defense, failure to grant an instruction submitting to the jury the question of manslaughter is not error.

3. HOMICIDE. *Refusal of instruction, not supported by evidence, held proper.*

     Instructions which are not supported by the evidence are properly refused.

APPEAL from circuit court of Leake county.

HON. A. J. MCLAURIN, Judge.

Mack Ealy was convicted of murder, and he appeals. Affirmed.

*J. L. McMillion,* for appellant.

We submit that the evidence in this case does not warrant a conviction for a greater offense than that of manslaughter, and that the court erred in not instructing the jury as to manslaughter. *May* v. *State,* 89 Miss. 291, 42 So. 164.

The court erred in admitting as the dying declarations of the deceased's alleged statements testified to by the different witnesses as having been made to them as the dying declarations of the deceased. The court also erred in overruling appellant's motion to strike out all that part of the evidence purporting to be the dying declarations of the deceased after the testimony of A. A. Moreland was in. The proof is positive that the last statement made by the deceased and testified about on the trial of this case concerning the difficulty was made to the witness, A. A. Moreland. Moreland testified that after the deceased had made a statement to him concerning the difficluty, he told the deceased that he thought he would get well, to which the deceased replied in these words: "I don't know, I am feeling mighty bad." This statement will be found in its complete form in the written agreement of facts by the district attorney and counsel for appellant now on file in this case, and from page 70 of the record. Before the statements of the deceased settled feeling of hopelessness on the part of the declarant when the statement was made, because of lack of sanction of oath and absence of opportunity for cross-examination of the declarant. *Sparks* v.

*State,* 113 Miss. 266, 47 So. 123. This settled feeling of hopelessness must be fixed and immovable. If there were any hope of recovery whatever from any source at the time the declaration was made, it was inadmissible. It must be made, as all the authorities hold, under the realization and solemn sense of impending death. *McNeil* v. *State,* 115 Miss. 678, 76 So. 625.

We submit that the court erred in refusing the fourth, fifth, twelfth and thirteenth instructions asked by the defendant, and especially, as to the thirteenth instruction. If the jury were permitted to consider the testimony of appellant and Antony Sparkman in reaching their verdict their testimony went to show there was a common fight engaged in, provoked by the deceased and in which he was the aggressor, and that in the excitement of the moment appellant shot and ran to escape further danger at the hands of the deceased.

We humbly submit that for the errors indicated this cause should be reversed and remanded for a new trial.

*H. Cassedy Holden,* special assistant attorney-general, for the state.

The appellant contends that he was only guilty of manslaughter, if guilty of any crime, and that the court erred in refusing to grant a manslaughter instruction. But this action was proper. The facts of the case did not justify a manslaughter instruction. The elements of manslaughter did not appear in the evidence, and in such a situation it would have been erroneous to have granted such an instruction. The appellant is guilty of murder or nothing.

Even had there been a fight or a quarrel immediately preceding the shooting, still the defendant would have been guilty of murder since he entered the combat dangerously armed and fought under an undue advantage. *Price* v. *State,* 36 Miss. 531.

Dying declaration.    The appellant complains that the
court committed error in admitting the dying declaration.
It is insisted that this declaration was incompetent because
it was not made at a time when the declarant was under
the sense of immediate and impending dissolution.    But
the evidence shows that this declaration was made on
the same night of the shooting.

The deceased had already stated that he was going to
die and that he could not live.    The declaration was re-
peated the next morning and the next evening just before
the declarant died.    Immediately before and after the
taking of these declarations, the deceased stated several
times that he was going to die.    He never at any time ex-
pressed any hope of recovery after he was shot.    He gave
instructions to his wife about the location of certain keys
and the disposition of certain property.    The witness
Moreland, a justice of the peace, took down in writing the
dying declaration of deceased in the morning following
the night of the shooting.    This witness asked McDougal
if he was going to get well, and he replied that he was not.
The witness told him that he (witness) thought that he
would, but the deceased replied: "I don't know, I am feel-
ing mighty bad."    This statement made in the morning
was repeated to the deceased's wife, in the evening just
before he died.

It is submitted that the court acted properly in admit-
ting the dying declaration.

Instructions refused.    The appellant complains of the
refusal of the 4th, 5th, 12th, and 13th instructions request-
ed by the defendant.    Instruction number 4, refused, ap-
pears at page 10 of the record.    This instruction is not
justified by the evidence.    There was no evidence that
Sparkman was in danger of death or great bodily harm
at the hands of McDougal at the time the defendant shot
McDougal.    There was no evidence that the defendant
shot McDougal to save Sparkman from death or great
bodily harm at the hands of the deceased.    Defendant tes-
tified that he shot McDougal to defend his own life.    The

court acted properly in refusing this instruction, which had no basis of fact in the evidence. The same conclusions apply to instructions number 5, number 12, and number 13, refused. There was no evidence upon which the court might predicate these four instructions. No witness testified, not even the defendant himself, that the defendant shot the deceased in an effort to protect Anthony Sparkman from death or great bodily harm at the hands of the deceased. Defendant testified that he shot the deceased because the deceased was advancing upon him and shooting at him.

The jury would have been well warranted in returning a verdict of guilty as charged in this case, and their limitation of the punishment to life imprisonment can only be ascribed to the splendid defense conducted by counsel for this appellant. The judgment of the lower court should be affirmed.

Cook, J., delivered the opinion of the court.

Appellant, Mack Ealy, and Anthony Sparkman were jointly indicted for the murder of John McDougal. A severance was granted, and appellant was tried, convicted, and sentenced to the penitentiary for life, and from this judgment and sentence, he prosecuted this appeal.

According to the testimony of the witnesses for the state the facts are substantially as follows: On the night of August 5, 1920, while services were in progress at Harmony Church, near Lena, Miss., John McDougal, the deceased, and Anthony Sparkman left the church together and walked some distance down the road, where they were discussing some previous trouble between Sparkman and McDougal's wife. In the meantime, appellant was informed that Sparkman and McDougal had gone down the road, and that he had better go down there. Appellant drew his pistol and proceeded to the place where the two men were talking, and as he approached them McDougal saw him and told him to go back, that they did not need

him, and that he and Sparkman had about settled their differences. Appellant refused to go, and after having told him a second time to go back, McDougal started toward him, whereupon Sparkman shot twice at McDougal. McDougal then turned towards Sparkman, and as he did so appellant shot him in the back and ran towards the church. McDougal pursued appellant and fell near the church.

The appellant testified that when he approached the place where McDougal and Sparkman were talking, McDougal told him not to come down there, and immediately ran towards him and began shooting at him; that he, appellant, shot twice at McDougal with a 38-caliber pistol, and then ran toward the church with McDougal pursuing him. Sparkman testified that he and the deceased were in a dispute at the time appellant approached them; that, when deceased saw appellant approaching, he ordered him to go back; that the deceased immediately started towards appellant and began shooting at him; that he, Sparkman, then pulled his pistol which was a 32-caliber, and shot twice at deceased. The deceased was killed by a 38-caliber bullet, which entered his body four or five inches from the spinal column.

As to what occurred at the scene of the killing, the state's case rests solely upon the testimony of one Percy Gilmore, an eyewitness, and the dying declarations of the deceased, and one of the assignments of error is based upon the action of the court in admitting these dying declarations.

We think the preliminary examination as to the competency of these several declarations clearly shows that they were made under the realization and solemn sense of impending death. The first statement he made was shortly after the shooting, and at that time he said he realized that he was going to die and he gave directions about the disposition of certain property and the care of his children. He repeated the declarations as to the hopelessness of his condition several times prior to his death the following

day, and at no time did he express any hope of recovery. It is true that a witness, Moreland, a justice of the peace, who took his statement a few hours before his death, testified that after the deceased had made the statement to him concerning the difficulty, and at a time when he was so weak he could hardly talk, the witness undertook to encourage the deceased by telling him he thought he would get well, and that the deceased replied: "I don't know, I am feeling mighty bad." In the light of all the other statements, made to this witness and others by the deceased, which clearly showed that he had a settled conviction that he was going to die and that death was then impending, we do not think this reply of deceased to the words of encouragement was an expression of hope of recovery, and we think the dying declarations of deceased were properly admitted in evidence.

Appellant next insists that the evidence does not warrant a conviction for a greater offense than manslaughter, and he assigns as error the failure of the court to grant an instruction submitting to the jury the question of manslaughter. Under the facts in evidence against this defendant, we do not think there is any element of manslaughter involved. Under the state's evidence, if believed, the defendant is guilty of murder. The defendant's testimony, if believed, establishes a clear and unquestioned case of self-defense. Neither the state nor the defendant asked an instruction in reference to manslaughter, and there was no error in failing to grant an instruction submitting this question to the jury.

The final assignment of error urged by counsel for appellant is based upon the refusal of certain instructions requested by the defendant. All of these refused instructions presented the theory that the appellant was justified in shooting the deceased, if he had reasonable cause to believe and did believe that Anthony Sparkman was in danger of losing his life or suffering some great bodily harm at the hands of the deceased, and that appellant, acting on such belief, killed deceased in order to save the

life of Anthony Sparkman, or to protect him from real or apparent danger of suffering some great bodily harm at the hands of deceased. Both the appellant and Sparkman testified that, when they began shooting, the deceased was advancing on appellant and shooting at him; there is not the slightest evidence that the deceased ever made any sort of demonstration which indicated a purpose or design to do any bodily harm to Sparkman, and since there was no evidence whatever to support these instructions they were all properly refused.

*Affirmed.*