## Adams *v.* State.

(Division B. April 6, 1936. Suggestion of Error Overruled April 20, 1936.)

[167 So. 59. No. 32041.]

J. W. Strong and Frank T. Williams, both of Mendenhall, and Martin & Berry, of New Hebron, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Anderson, J.,** delivered the opinion of the court.

Appellant and his brother, Johnnie Adams, were jointly indicted in the circuit court of Simpson county for the murder of Alonzo McIntosh. Johnnie Adams was never apprehended; appellant was therefore tried separately, resulting in a verdict and judgment of guilty, and a sentence to the penitentiary for life.

The killing took place about two o'clock Sunday morning, April 14, 1935, at the home of Albert Daughtry. There were many people present; the occasion was a "frolic" with drinking, crap shooting, fiddling, dancing, and fish frying going on. Everybody was drinking and many were drunk. Alonzo McIntosh was shot to death either by appellant or appellant's brother, Johnnie Adams, or both.

The evidence for the state, if true, established these

facts: Fifteen or twenty minutes before the homicide Alonzo McIntosh and Johnnie Adams had an altercation in the house; apparently it was not serious. Later appellant and Johnnie Adams left the house and were standing on the outside, appellant at the foot of the steps and Johnnie Adams on the porch. Alonzo McIntosh threw a bottle out of the door, which struck some one on the outside, but not appellant nor his brother. Whether he was simply throwing an empty bottle outside to get rid of it or throwing it at some one is not shown. Immediately after this occurrence both appellant and his brother began shooting at McIntosh; six shots were fired at him and three took effect; he died in a few minutes after being shot.

Appellant testified that he had nothing to do with the shooting; that when the first shots were fired he left the scene. Several witnesses testified on behalf of appellant that they could not tell whether any of the shots were fired by him.

By an instruction for the state the court took away from the consideration of the jury a verdict of manslaughter. This action of the court is assigned and argued as error. Under the evidence there was no element of manslaughter in the case. It did not tend to show that the killing was in the heat of passion and without malice; in other words, it was a case of murder or nothing. A manslaughter instruction should be refused where the evidence shows either murder or a justifiable homicide. Ricks v. State (Miss.), 151 So. 572; Dixon v. State, 164 Miss. 540, 143 So. 855; Winchester v. State, 163 Miss. 462, 142 So. 454; Bridges v. State, 154 Miss. 489, 122 So. 533; Brister v. State, 143 Miss. 689, 109 So. 728; Leavell v. State, 129 Miss. 579, 92 So. 630; Jones v. State, 129 Miss. 457, 92 So. 586; Ealy v. State, 128 Miss. 715, 91 So. 417.

The giving of the following instruction is assigned and argued as error:

"The court instructs the jury for the state that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Cliff Adams, and his brother, Johnnie Adams, were at the same time engaged in shooting at the deceased, as testified to, and acting in concert, each with a knowledge of the other, with intent to kill and murder the deceased in manner and form as charged in the indictment, and that as a result of said shooting participated in by the defendant and his said brother, the deceased was killed by bullets discharged by a pistol in the hands of either the defendant or his brother, then you should find the defendant guilty as ·charged regardless of whether you believe the fatal shot ·was fired by the defendant or his brother, Johnnie Adams."

The argument is that the instruction is on the weight of the evidence, that it peremptorily charged that the appellant and his brother were jointly engaged in the ·shooting. The criticism is without merit. The language in the instruction, "If you believe from the evidence in this case beyond a reasonable doubt," modifies all that follows. Another criticism of the instruction is that it used the words, "and acting in concert, each with a knowledge of the other." Under the state's evidence, appellant was a joint actor in the homicide with his brother, therefore no proof of prior conspiracy was necessary. Sparks v. State, 113 Miss. 266, 74 So. 123; Anderson ·v. State, 171 Miss. 41, 156 So. 645. It follows that the court did not err in refusing appellant's requested instruction that if there was a reasonable doubt in the case arising from the evidence or lack of evidence as to whether appellant did the shooting, then the jury should find the defendant not guilty "regardless of every other fact and circumstance in the case."

Appellant complains of the following instruction for the state: "The court instructs the jury for the state that the killing of a human being, without authority of law, by any means or in any manner, shall be murder,

when done with the deliberate design to effect the death of the person killed or of any human being.'' The instruction embodied the statutory definition of murder and was approved by this court in Atkinson v. State, 137 Miss. 42, 101 So. 490, and Brown v. State, 173 Miss. 542, 158 So. 339.

On appellant's motion for a new trial it was shown that after the trial had begun the jury were taken to lunch at the noon hour, and that one of the jurors, T. B. May, went in the toilet off from the jury room, and while there the others were taken out and the door was locked. A court attendant heard May knocking on the door and unlocked it, he came out, and a deputy sheriff took charge of him and escorted him to where the other jurors were having lunch. From the time the door was unlocked until the juror rejoined the group at lunch only two or three minutes had intervened. There was no showing of an opportunity for any one to tamper with the juror, rather to the contrary. It was not shown that appellant's rights were harmed, or that there had been an opportunity to harm them. Sanders v. State, 150 Miss. 296, 116 So. 433.

There is no merit in the argument that the verdict was against the overwhelming weight of the evidence; there was ample evidence to support it.

Affirmed.