RODGERS, Presiding Justice.
This case originated in the Circuit Court of Clay County, Mississippi, in which the appellant was indicted for murder. The jury found appellant guilty of manslaughter. He was sentenced to serve a term of twenty (20) years in the state penitentiary. He has appealed to this Court and now contends that he is entitled to a new trial because the verdict of the jury is against the great weight of the testimony.
The altercation leading to the homicide began over the disputed possession of a chair. The state offered testimony to show that on the night of February 2, 1973, James L. Collins, in company with his brother, a cousin, and his sister, Emma Collins, went to the Negro American Legion Post at West Point, Mississippi. They seated themselves around a table. Emma Collins left her chair and went to the ladies lounge. When she returned, she found her cousin and one Ruby Brooks scuffling over a chair. Ruby Brooks then attacked Emma. Collins. Someone separated them, and Ruby Brooks obtained a bottle with which she struck James Collins on the head. Robert Daniels and James Daniels backed James Collins against the wall, and both men drew pistols and began to fire at James Collins.
In the meantime, John Maddox, manager of the club, came out and endeavored to stop the fracas. His assistant manager, Joe Reeves, came out and told them to break it up; but the defendant pointed the pistol at him so that he retreated. However, he saw the defendant fire in the direction where James Collins was standing.
An off-duty policeman was in the building just before the shooting and testified that he heard shots, but went on home.
Reeves testified that he saw the defendant fire one shot into the ceiling of the room. Later it was removed and was said to have been a .22 caliber bullet.
One of the bullets fired at James Collins struck him in the left side and lodged in the pelvic bone. He was taken to the hospital where he died.
The bullet was removed from the body of the deceased and was introduced as evidence. The bullet was larger than a .22 caliber bullet.
The defendant offered testimony to show that several people heard a good many shots. The defendant testified that he was trying to separate the women from fighting when the deceased, James Collins, had him around the neck and he fired to get Collins off his neck. He testified that someone gave him the gun inside the building and when he went outside, someone took it from him. He heard more shooting in the building after he got outside.
On cross-examination, however, he admitted that he had the pistol when he went to the American Legion Post. The state offered a policeman who testified that the defendant took him to his mother’s home to get the gun, but he could not find it.
The appellant bases his argument upon the proposition that the bullet found in the body of the deceased was not a .22 caliber bullet.
The testimony shows that the appellant and his brother were firing pistols in the direction of James Collins at a time when he was standing, unarmed against a wall. The jury could have reasonably concluded that they were acting together in unison under the emergency induced by the-sudden fray.
As a general rule of law, all who join in a common design to kill another, whether in a sudden emergency, or pursuant to a conspiracy, are liable for the acts of an accomplice in furtherance thereof. It is sufficient if there were a community of purpose between the accused and the direct actor or person who actually caused the death, at the time the homicide was committed. Merrell v. State, 39 So.2d 306 (Miss.1949); Adams v. State, 175 Miss. *21 868, 167 So. 59 (1936); Sparks v. State, 113 Miss. 266, 74 So. 123 (1916); McCoy v. State, 91 Miss. 257, 44 So. 814 (1907); 40 C.J.S. Homicide § 9, at 848 (1944). Compare Riley v. State, 208 Miss. 336, 44 So.2d 455 (1950).
The defendant contended that he used a .22 caliber pistol and the bullet found in the body of the deceased was not from his gun. He told several stories about his gun. He first said someone gave him the gun, and that someone took it from his hand. He later said he took the gun to the Legion Club. He told the officers that he could take them to the gun, but when he took them to his mother’s house, he said he could not find the gun. The evidence shows that his brother was also firing a pistol at the same time. We think it was a jury issue as to whether or not the shots fired by the defendant or those fired by his brother actually caused the death of James Collins.
We think that there was ample testimony to sustain the verdict of manslaughter, and that the judgment should be and is hereby affirmed.
Affirmed.
INZER, SMITH, ROBERTSON and BROOM, JJ., concur.