330 So.2d 877 (1976)
Gregory WHITE
v.
STATE of Mississippi.
No. 49007.
Supreme Court of Mississippi.
April 27, 1976.
*878 Dyer, Dyer & Dyer, Greenville, for appellant.
A.F. Summer, Atty. Gen., by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, C.J., and ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
Gregory White was convicted in the Circuit Court of Washington County, Mississippi, on a charge of manslaughter and was sentenced to serve a term of eight (8) years in the Mississippi State Penitentiary. This is the second appearance of the case before this Court. On the first trial, White was found guilty of manslaughter, and the case was reversed because the State failed to identify the victim's body as being the body upon which an autopsy was performed.
On the night of January 11, 1973, appellant and Frederick Slayton were riding in an automobile driven by Archie Hampton in the City of Leland. They saw Russell Reynolds, the deceased, walking along the street, and Slayton told Hampton to let him out of the car. He got out of the car, started toward Reynolds, and appellant followed him. Appellant told the Chief of Police in his own handwritten confession, "We got out of the car. Freddie and I to do to him what he did to the girl Bernadine in order to let him know how it felt being treated like that." Reynolds walked hastily away from them, but they caught up with him.
Slayton hit Reynolds twice on the side of the head. He fell against an automobile and to the ground. Slayton kicked at Reynolds, and Reynolds caught Slayton's feet. Appellant testified that at that point he kicked Reynolds on the leg. Archie Hampton testified that he saw appellant kick at Reynolds toward his midsection. Slayton and appellant then went back to the car and left Reynolds lying in the street.
Officer Travis Jenkins of the Leland Police Department was dispatched to the scene. He found Reynolds lying face downward in the street in a pool of blood. There was considerable blood on the left side of his face and head. Reynolds was taken to a local hospital where he remained approximately twelve (12) hours and was transported thence to the Veterans Administration Hospital in Jackson where he expired on February 12, 1973, without having regained consciousness.
The medical evidence and autopsy indicated that the deceased received massive trauma to the left side of his head and lacerations and bruises above his left hip and over his lower legs and forearms. The cause of death was cerebral contusions, the immediate cause being bilateral pneumonia.
Appellant first contends that the trial court committed reversible error in granting *879 the State's Instruction Nos. S-3 and S-5, and in refusing to grant appellant's requested Instructions Nos. D-4, D-5, and D-12.
The State's Instruction No. S-5 told the jury that, if they believed from the evidence beyond reasonable doubt appellant, together with another person, intentionally sought out and assaulted the deceased with their fists and by kicking him with their feet, and that the deceased died as a result thereof, the jury should find defendant guilty. The instruction covered the State's evidence from the time that Slayton and appellant got out of the car, went to the place where Reynolds was, overtook him, struck and kicked him. The jury could have found that the two men, acting together, intended from the beginning to assault the victim.
In Gibbs v. State, 223 Miss. 1, 77 So.2d 705 (1955), this Court said:
"`In the absence of a conspiracy or common design the evidence must be sufficient, even in cases where the killing occurred in the course of a joint assault or affray, to show either that accused struck the fatal blow or aided and abetted therein. To justify the conviction of one who was not the actual slayer, where the proof does not show any prearrangement, conspiracy, or common design, the evidence must be sufficient to show that accused aided or abetted the actual slayer by overt act of assistance or oral expression of encouragement.' 41 C.J.S. Homicide § 322." 223 Miss. at 6, 77 So.2d at 707.
The State's Instruction No. S-3 charged the jury that each person present, consenting to the commission of an offense, and doing any act which is an ingredient or immediately connected with it, or leading to its commission, is a principal to the same extent as if he committed the whole crime.
In McCoy v. State, 91 Miss. 257, 44 So. 814 (1907), we said:
"In Wharton on Homicide (3d Ed.), at pages 49 and 50, it is said: `Each person present, consenting to the commission of the offense and doing any act which is an ingredient in the crime, or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense. Aiding in the commission of a homicide makes the aider a principal. To render one criminally responsible as a principal in a homicide, it is not necessary that he should inflict the mortal wound. It is sufficient that he was present, doing or abetting the act; and this is so, though there was no common design to kill or injure'  citing authority. See, also, Jordan v. State, 81 Ala. 20, 1 So. 577, and Wynn v. State, 63 Miss. 260, as shedding material light on this point." 91 Miss. at 267, 44 So. at 817.
In Bass v. State, 231 So.2d 495 (Miss. 1970), the Court said:
"There were no error in the court granting the State an instruction that any person, acting with others in the commission of a crime and aiding and abetting therein, are responsible as principals for the offense. In fact, that theory was supported by the defendant's own testimony." 231 So.2d at 496.
Appellant here testified that he kicked the deceased on the leg during the assault by Slayton, and he also gave his handwritten statement to that effect. We find no error in these instructions for the State.
Instruction No. D-4, refused by the court, set forth that it must be proven beyond reasonable doubt that the defendant planned the unlawful act with the direct actor or shared in the criminal intent of the direct actor, and further, that if the jury did not believe the actions of defendant were either the sole cause of death or were the partial cause of death or that his individual act substantially contributed to *880 the death of Reynolds, then he must be found not guilty. This is not a correct statement of the law. The jury could have found from the evidence that the two men left the car with the intent of assaulting the deceased, but not to kill him, or they could have found that the appellant went along without any intention of harming the deceased, but when he arrived at the scene he participated in the assault by kicking him. In either event, the jury would have been justified in finding appellant guilty as a principal.
Instruction No. D-5 was properly refused by the trial court. It instructed the jury that unless they found the action of appellant to be either the sole cause of the death of Reynolds, or that it substantially contributed to his death, they should find appellant not guilty. It is erroneous for the reasons stated above.
Instruction No. D-12 told the jury that, unless they further believed from the evidence beyond reasonable doubt the appellant was present at the time Slayton delivered a blow to the head of Reynolds, which blow resulted in the death of Reynolds, and that appellant knowingly aided or abetted Slayton in delivering the said blow, the jury should find him not guilty.
The State did not have to prove that appellant assisted Slayton in delivering the actual blow to the head which may have resulted in the death of Reynolds. To find him guilty, it was sufficient that the jury believe beyond reasonable doubt that appellant was present, aiding and abetting by any overt act of assistance or oral expression of encouragement. The instruction was properly refused.
There is no merit in appellant's assigned Errors 2 and 3, that the court erred in allowing the State to introduce and prove a conspiracy when the defendant was tried for manslaughter, and that the verdict of the jury is contrary to the overwhelming weight of the evidence.
In Daniels v. State, 293 So.2d 19 (Miss. 1974), the defendant's conviction of manslaughter was affirmed, and this Court said:
"As a general rule of law, all who join in a common design to kill another, whether in a sudden emergency, or pursuant to a conspiracy, are liable for the acts of an accomplice in furtherance thereof. It is sufficient if there were a community of purpose between the accused and the direct actor or person who actually caused the death, at the time the homicide was committed. Merrell v. State, 39 So.2d 306 (Miss. 1949); Adams v. State, 175 Miss. 868, 167 So. 59 (1936); Sparks v. State, 113 Miss. 266, 74 So. 123 (1916); McCoy v. State, 91 Miss. 257, 44 So. 814 (1907); 40 C.J.S. Homicide § 9, at 848 (1944). Compare Riley v. State, 208 Miss. 336, 44 So.2d 455 (1950)." 293 So.2d at 20-21.
The appellant admitted in his statement and then testified that he followed Slayton to the place where the deceased was, and joined in the assault upon the deceased by kicking him. The verdict was supported by the evidence, and we are of the opinion that the case should be and it is affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.