McGehee *et al. v.* State.*

(Division B. April 6, 1925. Suggestion of Error Overruled
May 25, 1925.)

[104 So. 150. No. 24707.]

1. Homicide. *Conviction based on conflicting evidence upheld.*

Where parties are indicted and convicted for killing another and
the killing is admitted, but circumstances of justification are set
up by defendants, and where such statements are contradicted
by the physical facts and other testimony, and where there was
no eyewitness other than defendants, the jury may disbelieve
the defendants' evidence, and a conviction under such circum-
stances will be upheld as to the party who did the killing.

2. Homicide. *Whether explanation of accused is true is question for
jury.*

Where death is inflicted by a deadly weapon by shooting in the
back, it devolves upon the defendant, where there was no eye-
witness, to bring into view circumstances which explain the
killing. If such circumstances are truthfully disclosed, the cir-
cumstances in contradiction of such version by the defendant
must be consistent with guilt and inconsistent with any reason-
able theory of innocence, but where the explanation is unreason-
able it is the province of the jury to determine whether the ex-
planation is true or not.

3. Homicide. *Instruction as to self-defense or defense of another held
not erroneous.*

In a case of homicide, where the court instructs for the state that
the law tolerates no excuse and accepts no justification for the
taking of human life upon the plea of defense of another, unless
it be reasonably necessary to save the slayer's life or to save him
from bodily harm, or to save another from great bodily harm at
the very time of the fatal shot, and if you believe from the evi-
dence beyond a reasonable doubt that the defendant shot and
killed the deceased at a time when neither he nor the other party
was in any immediate danger, real or apparent, of losing their
lives or suffering great bodily harm at the hands of deceased,
then the defendant is guilty either of murder or manslaughter,
murder if he acted of his malice aforethought, and manslaughter
if he acted without malice, is not erroneous.

4. HOMICIDE. *Facts must be sufficient to justify belief that killing is reasonably necessary to prevent felonious killing of another before killing justified.*

Under the law a person has the right to take life when it appears to be necessary to reasonable men to do so to prevent the felonious killing of another, yet his judgment as to such reasonableness is not conclusive but the facts must be sufficient to justify such belief before such person is authorized to act upon apparent danger within the meaning of the law.

5. CRIMINAL LAW. *Instruction defining murder and manslaughter held not reversible in view of instructions covering contingencies on which accused was justified.*

An instruction that "every willful killing of a human being not in necessary self-defense, and not justified by law, is either murder or manslaughter; murder if done deliberately and with malice aforethought; manslaughter if committed in the heat of passion, and without any deliberation whatever, and the deliberation necessary to constitute murder need only to exist for an instant before the fatal blow is made," is not reversible, where the instructions for the defendant fully cover the contingencies upon which he may be justified in acting in taking life in order to save the life of another.

6. HOMICIDE. *Conviction of person not actually taking part in killing reversed on failure to show conspiracy to kill deceased.*

Where a person is jointly indicted with another for murder and the killing is done by the other without eyewitnesses, and there is no evidence to connect such person with the killing itself, except that he was with the deceased at the time deceased was killed, and that deceased was killed by! his brother, and his evidence as to the circumstances leading up to the killing is unreasonable and contradicted, but there is no affirmative showing of conspiracy between the brothers to take the life of deceased, the conviction of such person, not an actual participant, will be reversed.

ON SUGGESTION OF ERROR.

7. HOMICIDE. *If facts relied on to change presumption of murder from killing with deadly weapon are unreasonable and improbable, verdict of murder will not be disturbed on appeal.*

When death is inflicted by the use of a deadly weapon and the killing is admitted by the defendant, it is assumed to be malicious and therefore murder, and to change the character of such killing there must appear from the evidence in the case something

which explains the killing and changes its character from an un-explained killing with a deadly weapon, and if the facts relied upon to change such presumption are unreasonable and improbable, the jury's verdict so adjudging will not be disturbed.

---

*Headnotes 1. Homicide, 30 C. J., Sections 545, 554; 2. Criminal Law, 16 C. J., Section 1568; Homicide, 30 C. J., Section 570; 3. Homicide, 30 C. J., Section 644; 4. Homicide, 30 C. J., Section 259; 5. Criminal Law, 16 C. J., Section 2494; 6. Homicide, 30 C. J., Section 548; 7. Homicide, 29 C. J., Section 74; Homicide, 30 C. J., Sections 358, 696.

Appeal from circuit court of Lincoln county.

Hon. E. J. Simmons, Judge.

Lorenzo McGehee was convicted of murder, and Jimmie McGehee was convicted of manslaughter, and they appeal. Affirmed as to Lorenzo McGehee; reversed and remanded as to Jimmie McGehee.

*Naul & Yawn* and *J. H. Sumrall,* for appellant.

The first assignment of error that: "The verdict of the jury was contrary to the law and the evidence," necessarily presents a question which brings into review all other errors assigned in this cause. It is impossible to conceive, from the facts disclosed in this record, which this court is necessarily confined to, how a conviction could have been had in this cause, which should have been based on the facts in evidence; as there is not one particle of evidence in the whole record that would justify a jury in reaching the conclusion upon which the state necessarily depended in asking for a conviction; as there is no motive shown, nor was the jury justified in finding from the facts properly in evidence that appellant, Lorenzo McGehee, who admittedly fired the fatal shot, was actuated by any other motive than a desire to protect the life of his brother, who at the time of the firing of the fatal shot was justified in believing, and did believe that his brother was in danger of losing his life, or suffering great bodily harm.

We respectfully submit that there is nothing in the evidence disclosed by this record, either by the testimony introduced by the state, or the appellants themselves, to even remotely connect appellant, Jimmie McGehee, with the killing of deceased Diamond; and therefore, the peremptory instruction requested for appellant, Jimmie McGehee, should have been granted.

Assignment of error No. 3 deals with the instruction granted to the state by the trial judge in the lower court, and especially do we call the attention of the court to the first instruction granted for the state, as shown on page 18 of the record, wherein the jury was instructed by the court that—''And in this case if you believe from the evidence beyond a reasonable doubt, that the defendant, Lorenzo McGehee, shot and killed Norris Diamond at a time when neither he nor Jimmie McGehee were in any danger, real or apparent, of losing their lives or suffering great bodily harm at the hands of Norris Diamond, then the defendant, Lorenzo McGehee, is guilty either of murder or manslaughter; murder, if he acted of his malice aforethought, and manslaughter if he acted without malice."—which plainly and unmistakably instructs the jury that if ''you believe," etc., that the shooting occurred at a time when neither of appellants was in danger of losing his life, or suffering great bodily harm at the hands of the deceased, then, the jury should convict.

By this instruction there was taken from the appellants in this cause a substantial and sacred right, to which they were entitled, to-wit—the right to act on the belief of appellant, Lorenzo McGehee, that his brother was in danger of losing his life, or suffering great bodily harm, and the burden was erroneously placed upon the defendants to prove to the satisfaction of the jury that under the circumstances detailed by them that such danger, real or apparent, in the belief of the jury, must have existed before the appellant, Lorenzo McGehee, would be justified in acting as he did in defense of his brother.

Surely no better authority could be found for the condemnation of this instruction than the clear and sound pronouncement of the law as made by this court, through Justice ETHRIDGE in *Jim Hathorn* v. *State,* holding that an instruction to the effect that it must appear to the reasonable satisfaction of the jury that the defendant had reasonable ground to believe, and did believe, and that there was reasonable cause to believe, etc., is erroneous.

Nowhere in this instruction is the jury told that they had a right to take into consideration what the defendant, Lorenzo McGehee, believed at the time he fired the fatal shot. There is not one scintilla of evidence in this record that even hints at a conspiracy. There is absolutely nothing in the record to indicate a preconceived plot on the part of appellants to bring about the death of deceased, but on the other hand it is abundantly shown by all the evidence of both appellants and witnesses for the prosecution that appellants and deceased were friends and had been for a long number of years.

The case of *Jim Hathorn* v. *State,* decided on February 9, 1925, by this court, and hereinbefore referred to, is the most recent pronouncement of this court of the principles hereinbefore set out; and this case, together with *Reddix* v. *State,* 134 Miss. 393, is positive authority in our judgment for the view that the trial court in this cause deprived the appellants of substantial rights by the form of instructions given wherein the jury was allowed to consider, without any evidence on said question, the theory of conspiracy on the part of appellant; and not only was this theory absolutely refuted by the plain testimony of appellants, as to how the killing occurred, but all the facts with reference to circumstances leading up to the killing bear out their testimony. The state wholly failed to show, even remotely, that any predicate had ever existed by reason of bad feeling between the parties, or any other motive whatever which would indicate a motive on the part of either appellant at any

time before to have brought about the death of the deceased.

*F. S. Harmon,* Special Assistant Attorney-General, for the state.

Various errors are assigned on this appeal, but sifted down to the last analysis the only vital questions before the court are the sufficiency of the evidence and the correctness of the instructions. We turn, therefore, to the case as made out by the state, prefacing the survey of the facts, however, with the frank statement that the case against Jimmie McGehee is far from strong and that the record contains little or nothing in the form of affirmative proof to show that the two brothers conspired to commit this murder.

Learned counsel for the appellants insists that the physical facts bear out the defense theory. We are utterly unable to agree with this contention. The car showed that the glass was broken in the rear curtain and in the windshield, and the undertaker swore that the bullet which killed the deceased went straight thru his body, thus indicating quite clearly that this gun was fired on a level, instead of from a superior height, such as the spot on the bank from which defendant swore he fired. The finding of the shotgun wad in the ditch, near a little stand on which milk cans were placed, makes it much more probable to believe that this defendant Lorenzo McGehee fired this gun when concealed there in the ditch at the side of the road after deceased's car had gotten some forty feet beyond him.

Jimmie McGehee's story is subject to grave impeachment on several grounds. At the threshold is the testimony of the young lady who admitted that she liked him and who surely would not have been adverse to protecting him if she could conscientiously have done so, yet this young lady contradicted Jimmie's statement that she had a date with him on the evening in question.

It is improbable to believe that a sixteen-year-old boy in grave danger which Jimmie says he was in, should have allowed Zeb Norton's car to go by him without making some effort to secure the protection of his friend Zeb, or made some effort, at least, to stop him. Furthermore, it is difficult to understand why Jimmie persisted in running down the road instead of going off into the field, since according to his own story he succeeded on three different occasions in getting ahead of Norris Diamond and was each time overtaken solely by reason of the fact that Norris Diamond started his car up again and ran him down with the car. Jimmie McGehee attempts to patch up this weak spot in his story by the statement that he was caught in a trap, by reason of the ditch on each side of the road and the character of the fence across the ditch.

Boiled down to the last analysis, we have the dying declaration of the deceased that Lorenzo McGehee shot him, the admission of Lorenzo McGehee that he fired the fatal shot and a series of physical facts and circumstances which negative the theory that this shot was fired in the necessary self-defense, either real or apparent, of his brother Jimmie. It was for the jury to believe or disbelieve the testimony for the defendants; the defense theory is subject to impeachment on so many grounds and is so clearly and completely negatived by the physical facts, that the jury was fully warranted in finding Lorenzo McGehee guilty and in disbelieving his explanation of the tragedy.

Quite frankly the situation as to Jimmie McGehee is materially different. There is no direct and positive evidence in this record to indicate that he conspired with his brother to lure the deceased to his death, and there is no evidence in the record to prove that he participated in the actual killing. But as to Lorenzo McGehee we assert with confidence that from the whole record, the jury was fully warranted in bringing in a verdict of guilty and that the facts sustain this verdict, and this

court will not disturb same, especially since no error of law was committed during the course of the trial.

*H. V. Wall,* also for the state.

If the facts in this case were not sufficient to go to a jury to say whether both of these defendants were guilty of murder, any person desiring to kill another, could shoot his adversary in the back, in the nighttime, and get on the stand and give his theory, be it ever so ridiculous, and escape punishment.

The facts in this case were properly submitted to the jury, under proper instructions, and the jury has passed upon them, and we all know from common experience, that juries in Mississippi do not usually convict without just cause.

In my opinion, there is no merit in the questions of law argued by counsel for the appellants. The instructions for the state were carefully drawn, according to the rules as laid down by our court. The Jim Hathorn case cited by counsel is not applicable. That case was reversed upon the erroneous admission of a dying declaration and the reference made by the court in the decision of that case to any instructions does not apply here. All of the instructions for the state charge that the jury must believe, beyond a reasonable doubt, that the defendants are guilty, before they convict them; all of the instructions for the defendants announce the same doctrine.

If the conviction cannot be sustained as to both of these defendants, upon the facts as disclosed by the record, then any person, desiring to kill another, could waylay him, in the nighttime, shoot him in the back and go before a jury, state that they had got out of the bed, in their night clothes, run down the road, heard a scream, thought somebody was being murdered and—shot.

I do not conceive this to be the proper enforcement of the law.

Argued orally by *J. A. Naul* and *J. H. Sumrall,* for appellants, and *H. V. Wall* and *Francis Harmon,* Special Assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

The appellants, Lorenzo McGehee and Jimmie Mc-Gehee, were indicted for the murder of one Norris Diamond. Lorenzo McGehee was convicted of murder and sentenced for life, and Jimmie McGehee convicted of manslaughter and sentenced for seven years in the penitentiary.

It appears from the evidence that on the evening of the killing that Jimmie McGehee, a boy of some seventeen years of age, went to the home of Norris Diamond, a man some thirty-three or thirty-four years of age, for the purpose, as related by Jimmie McGehee in his testimony, of getting a car of Diamond's to carry some young ladies to a meeting at Wesson, Miss., some four or five miles away from the scene of the killing. Jimmie McGehee testified that he arranged some days before said time for the use of the car and that he went there, took supper with Diamond, and when he started to leave that Diamond got in the car and drove with him some little distance to what is known as the graveled road. About the time they reached this graveled road Diamond began to curse him, told him he had not treated him right, that he had not invited him to go along with him, Diamond being a single man living with his mother.

Jimmie McGehee testified that he told Diamond that he did not know he wanted to go; that it would be all right if Diamond desired to go, but that Diamond became furious and threatened to kill Jimmie McGehee; that thereupon he (Jimmie McGehee) said he would not use Diamond's car and got out of the car, and Diamond got out and took hold of him and threatened to cut his throat; that he was struggling to get away from Diamond and at about that time a car approached and that he

went up the road and met the car, and that the man in the car spoke to him and he replied, and that after said car passed Diamond came on up the road in his car pursuing him, tried to run him down; that he dodged the car; and that Diamond went on along the road a piece and that he (Jimmie) ran by the car and proceeded in the direction of the home of his brother, Lorenzo; that when he got within calling distance he called his brother to come quick, that Diamond was trying to kill him; that Diamond pursued him in the car and just as he was getting opposite his brother's home that Diamond overtook him and said, "God damn you, I am going to kill you," and just as Diamond said that, that his brother heard the cries and asked what was the matter; that he (Jimmie McGehee) replied, "He is trying to kill me;" that thereupon his brother fired his gun and Diamond proceeded on in his car; that Jimmie McGehee returned with his brother to the latter's home, and in a few minutes that witness went out home and procured his father and went on back and met his brother and brother's wife and all returned to his father's house; that his brother was arrested that night and they learned that Diamond was killed.

The evidence for the state was that Mrs. Diamond, the mother of the deceased, stated that Jimmie McGehee came to her home about five p. m. or five-thirty p. m. and had supper and that he kept his eyes down and hung his head during the meal and did not talk and did not look up; that her son and Jimmie McGehee left in the car; that she had never known of any trouble between them; that the next she knew she had received the information that her son was dead. A colored man who lived near the home of Lorenzo McGehee, about two hundred fifty or three hundred yards across the road therefrom, testified that deceased drove up to his house right after the shooting; that he heard two shots fired, one sounded like a shotgun and the other like a smokeless shell pistol; that deceased drove up to his house and

called him and said, "I am dying," and he asked him what was the matter and he said "Lorenzo McGehee shot me." That he took deceased out of his car and laid him on the gallery and ran for help to a neighbor's house near by, and they returned; that deceased was on the gallery and expired almost immediately after their return. That deceased was shot in the back and through the lungs.

An inquest was held some time that night, and an undertaker was procured to take charge of the body. This witness testified that Diamond was shot in the back and the shot went directly through the body and lodged under the skin in front; that there was no wound in front but a small shot in the arm, in the back side of the arm. The car in which the deceased was riding was shot in the rear, the glass in the rear broken, and also the windshield in front. The range of the shot showed they proceeded in a straight line. There were also signs in the road where the glass was broken, in the rear there being thin glass and in front thicker glass. The deceased was wholly unarmed when he was examined by the coroner's jury, he did not even have a pocket knife.

The party who met Jimmie McGehee and Diamond shortly before the shooting recognized them, stated that Jimmie McGehee was in front with his cap pulled down over his eyes, that when he spoke to him, Jimmie replied, "Hey," that he spoke to Diamond and that Diamond spoke to him. That nothing attracted his attention to any trouble.

Lorenzo McGehee testified that he was at home; that his wife and children had retired, and that he was undressing preparatory to retiring and that he heard Jimmie McGehee call, "Come quick; he is going to kill me;" that he grabbed his single-barrel shotgun and an old pistol, and ran out to the road and hollered, "What's the matter, Jimmie?" and Jimmie shouted, "He is trying to kill me;" that about that time Diamond said, "Now I have got you, God damn you, I am going to kill you;" that he (Lorenzo McGehee) fired his gun, and

also fired the pistol one time, for the purpose of saving Jimmie's life; that the gun was loaded with a mixed charge of buckshot and squirrel shot, about No. 6 buckshot and No. 6 squirrel shot; that there had never been any trouble between Diamond and Jimmie McGehee, they had lived neighbors and that he, Lorenzo McGehee, merely shot to save his brother Jimmie.

There is nothing in the proof to show what the motive was that brought about the killing or that any ill feeling existed between the parties. Jimmie McGehee's testimony is all the light that the record shows as to motive. Jimmie's statement that he had an engagement with the young ladies to carry them to Wesson is contradicted by the young ladies who deny that they had had such engagement, but stated that they retired early that night and were not looking for Jimmie McGehee or any one else. The father of the young ladies also contradicted Jimmie and denied that he, himself, had any engagement with Jimmie that night. This witness is contradicted by some other witnesses as to statements made shortly after the killing to the effect that Jimmie McGehee did have an engagement to call and to carry him and the girls to church.

The defendants placed themselves at the scene of the killing and the *locus in quo* was examined by an engineer or surveyor and observations and measurements taken at the scene of the killing. These witnesses stated that the defendant, Lorenzo McGehee, could not have been where he said he was at the time he fired the shots and the shots have taken the range in Diamond's body and in the automobile that they did take. A gun wad was found in the road also and in direct line from what is known as the milk post by the roadside which was on a level with the road and from which they state the shots appeared to have been fired, taking the place where the wad was found and the broken glass in the road as a test, together with the evidence as to the condition of the car and the range of shot in the car and body of Dia-

138 Miss.—53.

mond. Both Lorenzo McGehee and Jimmie McGehee admit that Lorenzo fired the shot, and support the statement of the deceased to that effect.

The first assignment of error is that the verdict is contrary to the law and the evidence, and it is insisted that the evidence is insufficient to sustain a conviction either as to Lorenzo McGehee or as to Jimmie McGehee. It is insisted that there is no motive shown to justify a belief that the deceased was waylaid and shot, and that the evidence was insufficient to show any conspiracy.; that the state proceeded upon the theory that there was a conspiracy between Lorenzo McGehee and Jimmie McGehee to bring about the death of the deceased; and that the evidence is insufficient to establish such conspiracy and that the explanation of the defendants is reasonable in itself and in the absence of contradiction must be accepted.

There is no dispute that Lorenzo McGehee fired the shot. The evidence offered by the defendant in explanation of why this killing occurred is contradicted in material aspects by other witnesses and carries improbability upon its face. The physical facts at the scene of the homicide tend to contradict the defendants' statement about the location of the parties and as to how the shooting occurred. The negro at whose house the deceased died does not mention hearing any outcry before the shooting. The first thing he heard was the shooting. He was near by and it would appear that he would have heard the outcry if it could be heard by Lorenzo McGehee at his home.

Where death is inflicted by a deadly weapon and especially where the shooting is in the back it devolves upon the defendant to explain or bring into view the circumstances which explain the killing. It is true of course that when the circumstances are truthfully developed that the inference drawn from the circumstances must be consistent with guilt and inconsistent with any reasonable theory of innocence. But where the explanation is

unreasonable on its face, it is the province of the jury to determine whether the explanation is true or not. If the physical facts contradict the explanation and if it appears to the satisfaction of the jury that it is untrue, then the mere fact that the defendant testified to such statement does not of itself entitle the defendant to an acquittal.

The killing being admitted by Lorenzo McGehee and the facts and circumstances in evidence warranting the jury in finding that the defendants' explanation thereof is unreasonable and untrue, the evidence is sufficient to sustain the conviction as to Lorenzo McGehee.

As to Jimmie McGehee the proof is less certain. He is not shown to have had any actual connection with the killing so far as any overt act is shown by the evidence. His own explanation of the conduct of the deceased and of the occasion of his being with him carries elements of improbability, but before a conviction can be had evidence must be strong enough to establish guilt beyond reasonable doubt. Giving the facts all the credence to which they are entitled and drawing all natural inferences therefrom, we think the evidence is insufficient to show beyond a reasonable doubt that there was a conspiracy between Lorenzo McGehee and Jimmie McGehee to bring about the death of the deceased. The transaction is shrouded in mystery to a certain extent. There must have been something existing which the evidence does not disclose, and a new trial might disclose, as to his connection with the killing. We think it would be safer and better to reverse and remand the case as to Jimmie McGehee, and that we could not sustain the conviction as to him.

The appellant also complains of an instruction for the state which reads:

"The court instructs the jury for the state that the law tolerates no excuse and accepts no justification for the taking of human life upon the plea of defense of another, unless it be reasonably necessary to save the

slayer's life, or to save him from bodily harm, or to save the life of another, or to save another from great bodily harm at the very time of the fatal shot. And in this case, if you believe from the evidence beyond a reasonable doubt, that the defendant, Lorenzo McGehee, shot and killed Norris Diamond at a time when neither he nor Jimmie McGehee were in any immediate danger, real or apparent, of losing their lives or suffering great bodily harm at the hands of Norris Diamond, then the defendant, Lorenzo McGehee, is guilty either of murder or manslaughter; murder if he acted of his malice aforethought, and manslaughter if he acted without malice."

The criticism of this instruction is that it restricts too much the appellant and does not give him the benefit of the appearances under which he claims to have acted. That part of the instruction, "if you believe from the evidence beyond a reasonable doubt that the defendant, Lorenzo McGehee, shot and killed Norris Diamond at a time when neither he nor Jimmie McGehee were in any immediate danger, real or apparent, of losing their lives or suffering great bodily harm at the hands of Norris Diamond, then the defendant, Lorenzo McGehee, is guilty either of murder or manslaughter; murder if he acted of his malice aforethought, and manslaughter if he acted without malice," it is insisted takes from the appellant the right to act on the belief of Lorenzo McGehee that his brother was in danger of losing his life or of suffering great bodily harm, and that the burden was placed on the defendant to prove to the satisfaction of the jury and under the circumstances detailed by them that such danger, real or apparent, must have existed. In other words that the jury must believe that the danger was real or apparent, and not that Lorenzo McGehee must so believe, situated as he was.

We do not think the instruction subject to the criticism made of it. The defendant's belief is not conclusive. He must have reasonable ground to believe, and the jury are the judges of the reasonableness of the be-

lief. It is true they must place themselves in the situation the defendant was in, and view the circumstances as he then saw them and understood them, and not in the calm atmosphere of the after-developed situation. While a person has a right to take life when it appears to be necessary to reasonable men, he acts at his peril, because he must have reasonable grounds to believe that what were appearances were in fact realities, and if a reasonable man would not so believe from circumstances existing at the time, then it is an insufficient situation to constitute apparent danger within the meaning of the law.

It is complained that the instruction on page 20 of the record that tells the jury that "every willful killing of a human being not in necessary self-defense and not justified by law, is either murder or manslaughter; murder if done deliberately and with malice aforethought; manslaughter if committed in the heat of passion, and without any deliberation whatever, and the deliberation necessary to constitute murder need only to exist for an instant before the fatal blow is made," was misleading and denied the appellant, Lorenzo McGehee, the benefit of subsection (f) of section 960, Hemingway's Code (section 1230, Code of 1906), which reads: "When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished."

The clause in said instruction above set out, "and not justified by law," carries with it the idea of a right to take life which will be justified by law and not in necessary self-defense.

Another instruction given for the defendant to the effect that if the jury "believe from the evidence in this case that it reasonably appeared to defendant, Lorenzo McGehee, that the deceased was attempting to take the life of defendant, Jimmie McGehee, or do him great

bodily harm. Then and in that event defendant, Lorenzo
McGehee, had the right to defend his brother, Jimmie
McGehee, even to the taking of the life of the deceased
if apparently necessary to save the life of said defend-
ant, Jimmie McGehee, or to save him from great bodily
harm, although you may believe that Jimmie McGehee
was in no real danger, if he was in apparent danger
thereof," tells the jury the right the defendant, Lorenzo
McGehee, had to act in defense of his brother, Jimmie
McGehee, and this instruction is not overcome or affected
by the instruction complained of.

Taking all the instructions together and construing
them together as it is the duty of the jury and the court
to do, we think there is no reversible error as to the
defendant Lorenzo McGehee, and the judgment as to
him will be affirmed.

*Affirmed as to Lorenzo McGehee; reversed and re-
manded as to Jimmie McGehee.*

## On Suggestion of Error.

The judgment of conviction against the appellant,
Lorenzo McGehee, was affirmed on a former day and a
suggestion of error has been filed.

We deem it only necessary to refer to the fifth ground
of the suggestion of error which insists that we erred in
the following statement of the former opinion: "Where
death is inflicted by a deadly weapon and especially
where the shooting is in the back, it devolves upon the
defendant to explain or bring into view the circumstances
which explain the killing. It is true of course that when
the circumstances are truthfully developed that the in-
ference drawn from the circumstances must be consistent
with guilt and inconsistent with any reasonable theory
of innocence. But where the explanation is unreasonable
on its face, it is the province of the jury to determine
whether the explanation is true or not. If the physical
facts contradict the explanation, and if it appears to the
satisfaction of the jury that it is untrue, then the mere

fact that the defendant testified to such statement does not of itself entitle the defendant to an acquittal."

We should not have said in the opinion that "it devolves upon the defendant to explain or bring into view the circumstances which explain the killing." We should have said when death is inflicted by a deadly weapon, and especially where the shooting is in the back, there must appear, from the evidence in the case, something which explains the killing and changes its character from a killing by a deadly weapon unexplained.

The defendant may of course sit silent and not offer any evidence whatever, but where he does so he must take the consequences which flow from the evidence produced against him. If he does not testify, or if testimony is offered which the jury may rightfully disregard, and the jury does disregard it on the theory that it is unreasonable, its verdict will not be reversed, unless it is manifestly wrong, and in this case we cannot say that the verdict of the jury was manifestly wrong. We are of the opinion that there is no merit in the other grounds of the suggestion of error and that the mistake above referred to in the former opinion does not change the conclusion reached.

The suggestion of error will therefore be overruled.

*Overruled.*