LEE, J.,
for the Court:
¶ 1. This appeal is from a judgment of the Circuit Court of Lee County where the appellant, Darris Eugene Moore, was found guilty by a jury of the murder of Dantonio Smith and sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. He asserts as error that the court (1) should have granted his motion for a directed verdict, (2) failed to grant his motion for a new trial or, in the alternative, a JNOV, (3) granted jury instruction 12, which was the State’s instruction S-3A, and (4) refused jury instruction D-4. After a thorough review of the record, we find no reversible error and affirm the judgment of the trial court.
FACTS
¶ 2. At approximately 10:30 p.m. on December 11, 1997, Darris Eugene Moore went with three friends to a nightclub in Tupelo. As the club was closing at 2:15 a.m. and the patrons were leaving, Orlando Gates, one of Moore’s friends, made several lewd comments to Tomika Smith, who was also leaving the premises. A friend of Smith’s heard these comments and hit Gates, knocking him down in the parking lot of the club. A crowd of ten to twenty people then jumped on Gates, hitting and kicking him. There is no evidence that weapons were used during this altercation. The fight continued for three to six minutes when Moore went with his friends to the trunk of his friend’s car and retrieved a gun. Moore said he shot four times from a distance of about thirty feet at the crowd around Gates. The crowd disbursed, and Gates got into the car with Moore and the others and left. Moore testified that he heard more shots fired as they were leaving.
¶ 3. Gates testified that when he got into the car he saw a nine millimeter automatic pistol in Moore’s lap and that Moore said that he thought he hit two or three people. Gates said that he never saw anyone fall or get hit and that the shots were not coming *720 toward him when he was on the ground. He did not hear bullets whistling as the shots were fired. Gates was not bleeding and was not taken to the hospital or the emergency room.
¶ 4. The security guard on duty that night testified that he had just opened the door of the club to leave when he heard seven to eight shots being fired. As he went out he saw people running and screaming as a car was speeding off the parking lot. In addition, he saw that someone had been shot and was bleeding. As he went to investigate this he noticed a commotion at the east end of the club and observed that someone was walking with a weapon in his hand. This person fired two shots in the air and a third toward a car. The security officer was able to retrieve that weapon from the gunman as he walked toward the back of the building. That gun was a .38 revolver, and the security officer located some of the spent shells in the parking lot. He said that no one was hurt during the second round of shooting.
¶ 5. Patrick Gambrell, a witness who was in the parking lot about twenty feet away from the fight when it broke out said that he saw someone leave the crowd of people fighting. Gambrell said that this person went to a car, got a gun and shot about ten shots. Gambrell said that three to six minutes later he heard three to four more shots. He saw that these shots were aimed into the air and said that no one was hit during this round of shots.
¶ 6. The detective who was called to the scene testified that the spent shells and one live round found were nine millimeter bullets. All were found in the same spot. He also testified that in addition to the one fatality, three other victims were shot. Kenyatta Pearce, one of the victims, testified that he was not involved in the fight and was standing approximately thirty feet from the fight when he was struck in the abdomen by the first of some ten shots that he heard. These shots were fired within eight seconds of each other. He said he heard two or three more shots about three minutes after he went down.
¶ 7. Moore waived his rights and gave a statement five days after the incident in the presence of two officers of the Tupelo Police Department. In the statement Moore said he had taken a Ruger nine millimeter automatic pistol from the trunk of a car and did not know how many times he shot into the crowd because he had been drinking. He said that he told Gates that he hoped he “didn’t kill one of those boys.” Moore threw the gun off the bridge into the Tenn-Tom Waterway when the news reported that someone in the shooting had died. Efforts to retrieve the gun were not successful.
ISSUES
I. DID THE TRIAL COURT ERR IN NOT GRANTING THE DEFENSE ITS MOTION FOR A DIRECTED VERDICT ?
II. DID THE TRIAL COURT ERR IN NOT GRANTING THE DEFENSE ITS MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, A JNOV?
STANDARD OF REVIEW
¶ 8. In this appeal, Moore seeks relief in the form of a reversal and discharge or in the alternative, remand to the trial court for a new trial. The former is a consequence of legal insufficiency of the evidence while the latter is the product of an examination of evidentiary weight. May v. State, 460 So.2d 778, 781 (Miss.1984).
¶ 9. In assessing the legal sufficiency of the evidence on a motion for a directed verdict or a motion for JNOV, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. Yates v. State, 685 So.2d 715, 718 (Miss.1996); Ellis v. State, 667 So.2d 599, *721 612 (Miss.1995); Noe v. State, 616 So.2d 298, 302 (Miss.1993); Clemons v. State, 460 So.2d 835, 839 (Miss.1984). If under this standard sufficient evidence to support the jury’s verdict of guilty exists, the motion should be overruled. Brown v. State, 556 So.2d 338, 340 (Miss.1990); Butler v. State, 544 So.2d 816, 819 (Miss.1989). A finding that the evidence is insufficient results in a discharge of the defendant. May v. State, 460 So.2d 778, 781 (Miss.1984).
¶ 10. Where the weight of the evidence, as opposed to the sufficiency, is challenged, the jury’s verdict is vacated on grounds relative to the weight of the evidence so that a new trial is granted as opposed to final discharge. Id. In determining whether a jury verdict is against the overwhelming weight of the evidence the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will it be disturbed on appeal. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (citing McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). It has been said that on a motion for new trial the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Sinclair, 438 F.2d 50, 51 n. 1 (5th Cir.1971). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Mitchell v. State, 572 So.2d 865, 867 (Miss.1990).
¶ 11. The evidence to be evaluated regarding sufficiency for sustaining a conviction for murder and the evidence relevant to ascertaining whether the jury’s verdict was against the overwhelming weight will be the same in this case; evidence regarding sufficiency requires the court to accept as true all evidence favorable to the State, Yates, 685 So.2d at 718, and evidence regarding weight limits our review to that construed in the light most favorable to the verdict. Mitchell, 572 So.2d at 867.
DISCUSSION
¶ 12. Moore admits that he aimed and fired a Ruger 9 millimeter automatic pistol into a crowd of people. He claims, however, that there may have been another who fired into the crowd making it impossible to know who fired the fatal shot. In addition, he asserts that the State did not demonstrate the caliber of the projectile that killed Dantonio Smith and that the State failed to prove that any of the bullets he fired struck the decedent. He also points out that the description of the shooter’s clothing by a witness was not consistent with what Moore and Gates testified Moore wore that night. Adhering to the standard of review to which we are bound, we will review the evidence regarding these assertions.
¶ 13. Although we agree that the evidence shows that someone else fired two to three shots after Moore ceased firing, the evidence is consistent that the other person did not begin firing until after Moore shot into the crowd. Moore himself testified that he heard six to seven gunshots as he was leaving the parking lot. The security guard and an eyewitness testified that the second weapon was fired into the air and no one fell as a result. This testimony was not contradicted. Pearce also testified that there were two distinct rounds of shots and that he was wounded by the first shot of the first round. Moore also indicated in his statement that he suspected he had killed someone and said that he threw the gun off the bridge when he heard on the news that someone in the shooting had died.
*722 ¶ 14. It is true that no one saw one of Moore’s bullets strike Dantonio Smith and the bullet that killed him was not recovered so that the calibre of the gun that fired it could have been established.
However, these particulars are of no consequence in light of the evidence that Moore is the only person who shot in the direction of Smith and he was the only one shooting in the first round of fire. We thus find no merit to this aspect of Moore’s argument.
¶ 15. Moore also argues that if by some chance he did shoot Smith, his action was committed in the course of his coming to the defense of Orlando Gates. Though such a defense is recognized for a homicide, see Miss.Code Ann. § 97-3-15(1)(f) (Rev.1994), the proof in mounting such a defense must demonstrate that the facts present at the time of the killing are such as to justify the belief of reasonable men that it appeared necessary to use deadly force in order to prevent the felonious killing of another. McGehee v. State, 138 Miss. 822, 837, 104 So. 150, 153 (1925). Generally, an affray not involving weapons will not call for the use of deadly force. The defense of another permits the use of force commensurate with the force offered. Fortenberry v. State, 213 Miss. 116, 122, 56 So.2d 56, 58 (1952).
¶ 16. Though the relevant statute casts the killing of a man in the necessary defense of another in terms of justification, this license does not justify shooting wildly and blindly into a crowd of people, some of whom in this case were mere bystanders and not even involved in the fight. Such indiscriminate use of deadly force cannot be thought to be a reasonable use. There was no evidence that the fight with Gates involved any weapons, and Gates suffered no serious harm. Moore introduced deadly force into the fight while under the influence of alcohol. Though Moore and Gates testified that Smith was involved in the fight, there was compelling evidence that he was not a participant. That the jury rejected Moore’s claim of defense of another is not a proper cause of complaint. Dye v. State, 498 So.2d 343, 344 (Miss.1986). Whether Moore’s actions were unreasonable was ultimately a jury issue. A review of the evidence shows that the evidence is sufficient to support the verdict and that the verdict is not against the overwhelming weight of the evidence, meeting the standard of review to which we adhere. May, 460 So.2d at 781.
III. DID THE TRIAL COURT ERR IN GRANTING INSTRUCTION 12 AND IN REFUSING TO GRANT D-4?
¶ 17. The Mississippi Supreme Court has clearly stated the standard of review when reviewing jury instructions in Edwards v. State, 737 So.2d 275 (¶ 85) (Miss.1999). In granting or refusing various instructions, the instructions given must be read as a whole. When so read they should fairly enunciate the law of the case and create no injustice in order to withstand a finding of reversible error. Id.
¶ 18. Moore asserts that the trial court erred in granting Instruction 12 because the instruction did not precisely follow the language of Miss.Code Ann. § 97-3-15(1)(f) (Rev.1994). That statute states:
The killing of a human being by the act, procurement, or omission of another shall be justifiable ... when committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished....
Instruction 12 in essence followed the statute; however, it did not instruct the jury that a killing was justifiable if there is reasonable ground to apprehend a design to commit a felony, and Moore claims that this failure is reversible error. Because Moore does not cite authority for this assertion, the error is not properly before the Court. Roberson v. State, 595 So.2d *723 1310, 1318 (Miss.1992). We will, nevertheless, address the merits.
¶ 19. The record is clear that the decision to grant the instruction as drafted was intentional. The court stated that there was nothing in the evidence to suggest that a felony other than perhaps an aggravated assault was involved in this case. The instruction stated that the killing was justifiable if the jury found that Moore had reasonable grounds to apprehend a design on the part of the victim to do great bodily harm to Gates. It appears that the court tailored the instruction to the evidence presented in order to avoid confusion. A trial court is obligated to instruct the jury on the principles of law applicable to the case as developed by the evidence. White v. State, 169 Miss. 332, 339, 153 So. 387, 389 (1934). There was no evidence regarding a felony other than an aggravated assault and it was not error to eliminate the alternative felony language of the statute. Hicks v. State, 580 So.2d 1302, 1306 (Miss.1991).
¶ 20. Moore also claims that the court erred in its failure to grant Instruction D^4, which regarded justification for the use of a deadly weapon when those attacking are not armed. The defense argued that the instruction was necessary because there was no evidence presented before the jury that any member of the group of persons who attacked Gates was armed. The court refused the instruction because it had already instructed that the one being attacked must have been in imminent danger of either death or great bodily harm and there was no instruction requiring that the attackers be armed in order to justify the defense. There was no error in the refusal of this redundant instruction. Higgins v. State, 725 So.2d 220, 223 (Miss.1998). Moore cites Manuel v. State, 667 So.2d 590 (Miss.1995), in support of his argument. In that case the court reversed because there was no other instruction setting out the defense of justification, which is not the case here.
¶ 21. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, MYERS, PAYNE, and THOMAS, JJ., concur.