Henry McCoy v. State of Mississippi.

[44 South., 814.]

CRIMINAL LAW AND PROCEDURE. *Evidence. Previous difficulty. Specific acts of violence. Res gestæ. Homicide. Aiding and abetting. Principal and accessory.*

If, after a difficulty between deceased and defendant's brother, defendant and another follow and overtake deceased and both attack him at the same time and stab him with sharp instruments, from which he dies:—

(*a*) Everything done by either at the time they were so engaged is admissible in evidence as a part of the *res gestæ* against either or both, although there be no direct proof of a conspiracy to kill deceased; and

(*b*) It is unnecessary to a conviction of either to show beyond a reasonable doubt that his independent act did the killing; since

(*c*) Each person present, consenting to the commission of an offense, and doing any act which is an ingredient of or immediately connected with it, or leading to its commission, is a principal to the same extent as if he committed the whole crime; and

(*d*) Testimony touching the details of the previous difficulty between deceased and defendant's brother, although it occurred on the day of the killing, is not admissible in evidence; nor is

(*e*) Testimony showing various specific acts of violence by deceased, at different times and places, admissible in evidence in addition to proof of his general reputation for violence.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

McCoy, appellant, and one Douglas were jointly indicted for the murder of one Russell. A severance being had, appellant was tried and convicted of manslaughter, sentenced to the penitentiary for fifteen years, and appealed to the supreme court.

The opinion of the court states the facts.

*T. D. Marshall,* for appellant.

The court below erred in refusing to permit appellant to show the details of a previous difficulty between Bard McCoy and Ell Russell, occurring on the day of the homicide. The theory of appellant's defense was that he had good reason to believe that Ell Russell was about to inflict a deadly injury upon his brother, and all of appellant's acts in reference to the killing, were done either to save his brother's life, or to protect him from great bodily injury. The knowledge a man has of another's character, is always an important factor in his dealings with him, and such knowledge is derived from the general reputation the person bears in the community, and from the man's personal experience of such other person. It was because appellant knew of this previous difficulty between his brother and Russel, that this unfortunate homicide occurred, and the facts of this previous difficulty between appellant's brother and Russell was material and competent. *Brown* v. *State,* 87 Miss., 802; s.c., 40 South., 1009.

The court below further erred in refusing to admit evidence on behalf of appellant to show specific acts of violence committed by the deceased, Ell Russell, at different times and places, as well as to show the general reputation of deceased for violence. Appellant was in position to show, by creditable witnesses, that the deceased had attempted to kill a man in Jefferson county, and had subsequently left that county on that account.

" When the turbulent character of the deceased in a prosecution for homicide is relevant, there is no substantial reason against evidencing the character by particular instances of violent or quarrelsome conduct. Such instances may be very significant: their number can be controlled by the trial court's discretion; and the prohibitory considerations applicable to an accused's character, have little or no force here." Wigmore on Evidence, 242; *State* v. *Baird,* 92 N. W. Rep., 694; *State* v. *McIvers,* 125 N. C., 645.

More serious, if possible, was the exclusion of the testimony offered by the witnesses, Cora Flowers, and others, as to what Joe Brown said when he rushed into the room where appellant was, while Bard McCoy and Ell Russell were struggling on the ground. This struggle was part of the difficulty, and evidence as to the same should have been admitted under the rule of *res gestæ,* and to prove the motive of both parties. What Joe Brown said would have tended to throw light on whether the difficulty was sudden, or whether it was planned.

The court below should have refused the instructions asked by the state, since they were definitive of murder, and there is nothing in the case to show murder. On the other hand, the trial court should have granted all of the instructions asked by the defendant which it refused.

The indictment in this case was against appellant and Douglas, jointly, but the two defendants were tried separately. Nothing that Douglas did at the time of the killing should have been permitted in evidence on the trial of appellant. We state this for the reason that no conspiracy is shown to have existed between the parties. Unless there was a conspiracy clearly shown by the evidence, the state was obligated to show, beyond a reasonable doubt, that appellant killed the deceased, in order to make appellant in any way liable under the circumstances. *Pulpus* v. *State,* 84 Miss., 49; s.c., 36 South., 190. Certainly appellant can not be legally found guilty of the charge in the indictment, or of manslaughter, unless the state can show, beyond a reasonable doubt, from the evidence, that he, the particular one, did the killing.

*R. V. Fletcher,* attorney-general, for appellee.

Neither in the assignment of errors nor in the motion for a new trial is there any specific designation of what particular rulings of the court below are complained of; hence the court below, in considering the motion for a new trial, did not have its attention directed to the particular objections relied on.

This being true, the case, in this respect, must be governed by the principles laid down in *Richberger* v. *State,* 90 Miss., —; 44 South., 772.

Complaint is made by appellant that he was not permitted on the trial to show specific acts of violence committed by deceased as demonstrating the violent character of the deceased. The general reputation of deceased for peace and violence was shown, but the court below declined to go into specific acts, except such as fell under the appellant's personal observation. The great authority of Prof. Wigmore is invoked to show the competency of such proof attempted to be offered by appellant, but it is hardly probable that his abstract statement of what the law ought logically to be will prevail against the current of decision in this state. *Moriarity* v. *State,* 62 Miss., 654; *Brown* v. *State,* 72 Miss., 997; *Kearney* v. *State,* 68 Miss., 233; *Wesley* v. *State,* 37 Miss., 327; Wharton on Homicide, 440.

Another complaint grows out of the fact that the court declined to permit proof of the details of a previous difficulty, not between appellant and deceased, but between a brother of appellant and the deceased. This difficulty had occurred in the afternoon of the same day upon which the killing subsequently occurred. The court below admitted prof of the fact of a previous difficulty, but declined to allow details. It seems that after this difficulty, a full reconciliation had taken place, and it is hard to see how the second and fatal encounter could have been a mere continuation of the earlier affair. Indeed, this record nowhere discloses just what were the circumstances of the first difficulty so that this court cannot say whether the two affairs were so connected as to render the details of the first competent. There is nothing here to show that the two difficulties grew out of a common cause, that they logically form one connected and continuous line of hostile conduct on the part of the deceased toward the slayer,

that in both of them the deceased was the aggressor.    *Brown v. State,* 88 Miss., 166.

If appellant shall claim that he is not responsible for the silence of the record as to such details, the obvious reply is that the appellant should have asked the court to hear the proof in the absence of the jury, so that this court in some way might be advised of its character.    The general rule is well established that the details are not admissible; and only in peculiar and exceptional cases will the court vary from the rule.    Furthermore, appellant did not see the earlier difficulty, and he so testifies, and had not been advised as to the details of the same. He had only heard that a difficulty had taken place.    How, therefore, could details, which he is not shown to have known, be any justification for his action in cutting deceased?

Appellant insists that he should have been allowed to prove by Cora Flowers and others what Joe Brown said during the difficulty.    But Joe was not a participant in the difficulty. He was a mere spectator, on the inside of the house, watching a difficulty which was going on on the outside.    His version of the matter could not be a verbal act, but a narrative.    The fact that it was spoken contemporaneously with the transaction is not conclusive in favor of its competency.

Complaint is made that all the charges given for the state are based on the theory of murder; but, inasmuch as the appellant was acquitted of murder, and found guilty of manslaughter, it is hard to see where he can complain.

Appellant insists that he should not have been convicted, because the only state's witness could not say positively whether appellant or Jack Douglas (who was indicted jointly with appellant, but tried separately) struck the fatal blow, and because there was no proof of a conspiracy.    But the witness testified that both of these parties were actually on top of deceased, and both were striking deceased.    In this attitude of the proof, appellant is guilty, independent of any proof of conspiracy, since both appellant and Douglas were present and actively

participating in the attack upon deceased. The charge refused was a manslaughter charge, the refusal of which was harmless even if properly drawn, since the jury adopted the manslaughter theory anyway.

Argued orally by *T. D. Marshall,* for appellant, and by *R. V. Fletcher,* attorney-general, for appellee.

Whitfield, C. J., delivered the opinion of the court.

The argument made by the learned counsel for the appellant in this case and in the companion case of *Douglas* v. *State,* 44 South., 817, has received our serious consideration because of its great ingenuity and ability; but the difficulty with the case is that the testimony satisfactorily meets, as we think, all the contentions of the learned counsel. The case made is such as to require affirmance. The gist of the case in short is this, as testified to by the only witness for the state, William Mack, who was a very intelligent witness, the foreman on the Briarfield plantation, in Warren county: That whilst Bard McCoy, a brother of the appellant, Henry McCoy, was going up the gallery of the house Saturday night before Christmas with a turn of wood, Ell Russell, the dead man, started out of the door leading to the steps; that Bard McCoy dropped his wood, and struck Ell Russel with a stick, and knocked him to his knees; that Bard McCoy then jumped on Ell Russell and struck him; that in that difficulty Ell Russell shot Bard McCoy; that the two then struggled together, and rolled down the steps onto the ground; that he, the witness, and Will Walters, and Henry Gibson, the constable, went down onto the ground where they were scuffling; that Gibson fired a shot to scare them and make them quit; that they did get away from Ell Russell, and that then Henry McCoy and Jack Douglas pursued Ell Russell, and that one of them knocked him down, the witness did not know which one; that both Henry McCoy and Jack Douglas got on top of Ell Russell, who was down on

the ground, and that both had in their hands sharp instruments which would cut, and that both cut him, striking repeatedly at the same time; and that the dead man was killed, dying instantly. It was subsequently shown that he had three cuts, one about the chin, one in the throat, and one in the groin. It is to be noted that Henry McCoy flatly contradicts the witness for the state as to his having anything to do with this pursuit of Ell Russell and this stabbing when he was down on his back in the field. Henry McCoy testifies that he was not out there at all, but went in the house with his brother. It is perfectly manifest that the jury entirely discredited Henry McCoy's testimony. Henry McCoy further testifies that he himself inflicted these wounds with the knife, whilst Ell Russell was struggling with his brother, Bard McCoy, on the ground at the foot of the steps. This, too, the jury evidently entirely disbelieved.

One of the errors complained of is that the court would not permit the defendant to show the details of a previous difficulty occurring some time before on the same day, between Bard McCoy and Ell Russell, on the trial of Henry McCoy; and the case of *Brown* v. *State,* 87 Miss., 802, s.c., 40 South., 1009, is invoked. The facts of this case do not bring it at all within the exception stated in the *Brown case,* and the court was right in excluding the details of this previous difficulty between Bard McCoy and Ell Russell.

It is next urged that the defendant should have been permitted to show various specific acts of violence committed by the deceased at many different times and places, as well as to show his general reputation for violence. Whatever may be the better rule on principle, the exclusion of this testimony, under the former decisions of this court, was correct. *Moriarity* v. *State,* 62 Miss., 654; *Brown* v. *State,* 72 Miss., 997, 17 South., 278; *Kearney* v. *State,* 68 Miss., 233; 8 South., 292; *Wesley* v. *State,* 37 Miss., 327; 75 Am. Dec., 62.

The complaint that the testimony of Cora Flowers and others

as to what Joe Brown said when he rushed into the room where the defendant was, while Bard McCoy and Ell Russell were struggling on the ground, should have been admitted, was immaterial, since the substance of his testimony did get to the jury, without objection, as shown plainly by the testimony of Henry McCoy himself. This objection is, 'of course, without merit.

No complaint can be made here of murder instructions, since the defendant was acquitted of murder. The instructions asked by the defendant, and which were given, were drawn with great care and most abundantly covered his case. The refused instructions were properly refused. We think the jury was well warranted, from the testimony in the case, in finding the defendant guilty of manslaughter. At any rate, they certainly had evidence from which they might have so found.

Really the most serious contention in this case and in the companion case of *Douglas* v. *State,* 44 South., 817, is presented by two instructions which were refused in the case of Douglas, and which (as the reasoning in the briefs of the learned counsel for the appellant in both cases is attempted to be applied to the facts in both cases) we will notice here in one opinion, to cover this feature in both cases. Those instructions in the *Douglas case* are as follows:

" No. 3. The court instructs the jury that, even though they should believe from the evidence that Jack Douglas followed Ell Russell out in the field after Bard McCoy was being helped in the house and did everything that George Mack says he did, yet a jury cannot find him guilty as charged, unless the state has proven beyond a reasonable doubt that Douglas inflicted the identical wound, or wounds from which Ell Russell died, unless the state has proven beyond a reasonable doubt by evidence of witnesses that Henry McCoy and Douglas conspired together willfully, feloniously, and with malice aforethought, to kill and murder the said Ell Russell.

" No. 4. The court instructs the jury that the state must show

beyond a reasonable doubt that it was Douglas who killed the deceased, Ell Russell, and if the state has not done this beyond any reasonable doubt, then the jury must find the defendant Douglas not guilty of murder."

It may be said that, in so far as murder is concerned, the jury have acquitted both McCoy and Douglas of that charge, and much of the argument on that charge is thereby rendered inapplicable. In fact, both these charges are murder charges. In No. 3 it is said that the jury cannot find the defendant Douglas guilty as charged — that is, of murder; and so the fourth charge says.

But, coming to the specific proposition which the learned counsel for the defense in both these two cases presents, we find it to be this, in its last analysis: That nothing should have been permitted to go to the jury which was done by Douglas at the time of the killing against McCoy on his separate trial, and that nothing which was done by McCoy at the time of the killing should have been permitted to go to the jury against Douglas on his separate trial, for the reason that no conspiracy is shown to have existed between the parties. That is the first branch of defendant's contention. And, secondly, that, unless the evidence shows that there was such a conspiracy, then the state must be required to show by the evidence, before either can be convicted, that he himself killed Ell Russell. Now, we remark, first, in answer to the first branch of this contention, that everything done by either of these parties at the time they were upon the deceased, both stabbing him with some sharp instrument, was competent as part of the *res gestæ*. The case of *Pulpus* v. *State,* 84 Miss., 49; s.c., 36 South., 190, is not at all in point here. Learned counsel for appellant misconceive the true purport of that case. The parties in that case, who had rabbit sticks in their hands, had nothing whatever to do with the killing. They did not participate in the killing in any way whatever. They were mere bystanders. Both these parties were on top of the deceased, and both stabbing him

repeatedly with some sharp instrument, which manifestly produced his death. To hold in a case like this that what was done by one could not be proven by evidence in the trial of the other would be equivalent to holding that in such case neither could be convicted of murder at all, in the absence of proof of conspiracy. To state this is certainly to demonstrate its plain unsoundness. In 12 Cyc., at page 437, it is said: " The declarations and acts of any participant in a crime, present at its commission, are competent against all then present. It is sometimes intimated that declarations uttered under such circumstances are received against the accused as the statement of a co-conspirator; but the true rule is that these declarations by one are admissible against all, under the rule in relation to *res gestæ*." This is unquestionably the true foundation of the competency of such testimony.

Turning, now, to the second branch of the proposition — that neither of these defendants can be found guilty of manslaughter even, unless the state shall show beyond a reasonable doubt from the evidence that that particular one did the killing — we observe, first, that we are satisfied that the jury would be well warranted in finding from the testimony in this case that both of these defendants inflicted fatal wounds; but, apart from this right of the jury so to find, it is not the law that neither could be convicted, as stated, unless the state could show that he, by his own independent act, did the killing. These parties were manifestly aiding and abetting each other in the commission of this homicide — both on him at the same time, both pursuing him for some distance at the same time, both jumping on him when he was down together, both stabbing him at the same time, until made to get up by William Mack and leave him. It must follow, " as the night the day," that each saw the other, each knew that the other was trying to kill the deceased, each struck in furtherance of a common purpose to kill, and, whether one killed or the other killed, both are guilty

as principals under our statute, having aided and abetted each the act of the other.

The principle we thus announce is abundantly supported by authority. In a strikingly similar case (*State* v. *White,* 138 N. C., at page 723; 51 S. E., at page 50), where two brothers had shot at the same time and killed a third person, and the same argument made here was made there, the court said: " The suggestion that, if there be a reasonable doubt as to which one fired the fatal shot, both must be acquitted, cannot be sustained. The persons may have gone to the house without any purpose to kill or do unlawful violence. They had a common purpose, and when they drew their weapons they entered on that purpose unlawfully, and were so manifestly acting together, one in the aid of the other, that a killing by either under the facts of this case would inculpate both." This is precisely the principle covering the case at bar. In *Regina* v. *Price et al.,* 8 Cox's Crim. Law Cases, 96, it was held, where six men assaulted another man, and one of the six inflicted a stab and killed the person assaulted, and they were jointly indicted for murder, that: " First, the man who stabbed was guilty of murder, whether he intended to kill or not; second, the other five would be guilty of murder if they participated in a common design to kill; third, if there was no common design to kill, if the knife was used in pursuance of a common design to use it, they would all be guilty of murder; fourth, if there was no common design to use the knife, and if, being present at the moment of the stabbing, they assented and manifested their assent by assisting in the offense, they were guilty of murder." The third and fourth points above fit in here perfectly. To the same effect are *State* v. *Prater,* 52 W. Va., 132; 43 S. E., 230; *Vasser* v. *State,* 75 Ark., 373; 87 S. W., 635. In Wharton on Homicide (3d ed.), at pages 49 and 50, it is said: Each person present, consenting to the commission of the offense and doing any act which is an ingredient in the crime, or immediately connected with it, or leading to its com-

mission, is as much a principal as if he had with his own hand committed the whole offense. Aiding in the commission of a homicide makes the aider a principal. To render one criminally responsible as a principal in a homicide, it is not necessary that he should inflict the mortal wound. It is sufficient that he was present, doing or abetting the act; and this is so, though there was no common design to kill or injure "— citing authority. See, also, *Jordan* v. *State,* 81 Ala., 20; s.c., 1 South., 577, and *Wynn* v. *State,* 63 Miss., 260, as shedding material light on this point.

We find no error in the record in this case, and the judgment is *affirmed.*