THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ISIDORO SANTIAGO RIVERA ET AL., Defendants and Appellants.

No. 5788. Argued January 16, 1936.—Decided March 13, 1936.

*Tomás Acosta Ramis* and *J. Martínez Juliá* for appellants. *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The District Attorney of San Juan filed an information against Isidoro Santiago and Sergio Rivera charging them with the crime of murder, in that in Río Piedras, on February 12, 1934, they unlawfully killed Cirilo Rivera, a human being, with malice aforethought.

The defendants pleaded not guilty and asked for a jury trial. After the cause went to trial, the evidence was heard and the jury instructed, the latter rendered its verdict convicting them guilty of murder in the first degree, and the court duly sentenced them to life imprisonment.

They appealed to this court. They maintain that the verdict and the judgment are contrary to the evidence.

█ Let us examine the evidence.

The witnesses for The People were Dr. Basilio Dávila, Víctor de la Paz, Carmen María Castro, Luis de la Paz, Inocencio Delgado, Francisco Orosco, Isaac Vélez, José Calderón Miró, and José Manuel Ortiz, and for the defense the accused themselves and Enrique Ledesma.

The physician performed an autopsy on the body of Cirilo Rivera, who was a strong man of about forty years of age. The body presented a wound which extended across the hand, severing the tendons, and which reached the bone; another wound in the left elbow about one inch long but very deep; another one in the back just below the right scapula; and another one in the back below the twelfth rib which entered the abdominal cavity injuring the pancreas and which produced the hemorrhage causing the death. On cross-examination, he testified that the wound in the hand might have been inflicted with a machete, and those in the back with a knife, and that the victim was physically stronger than either of the defendants.

Víctor de la Paz testified that he was sent by Isidoro Santiago for some firewood which he took to his home where Cirilo Rivera, the deceased, came in saying that the firewood belonged to him as he had bought it from Ledesma for fifty cents, and then left. Santiago then came up and said to him: "Go and tell Cirilo to come here." He went and upon Cirilo's arrival "Santiago immediately attacked him with a machete and Sergio (the other defendant) attacked him with a knife." Santiago attacked him from in front; Sergio from behind.

Carmen María Castro described the occurrence thus: "I was at home and I heard shouts, and upon hearing someone cry out: 'Don't kill me,' I looked out of the window and saw Isidoro Santiago wounding Cirilo with a machete and Sergio stabbing him in the back, I heard no more and I went out on the street." Bernardo de la Paz testified thus: "I saw Cirilo all covered with blood and I saw Lolo with a machete, with an old machete, and Santiago behind him with a knife. One attacked him from in front and the other from behind."

Inocencio Delgado stated: "On that day I was standing at a corner when I heard shouts and went there, and on reaching the shed I saw Cirilo falling back and shielding himself followed by Isidoro holding a machete and attack-

ing him from in front, and he was falling back, and I noticed that he was wounded; then I saw Sergio holding the knife up in the air in this way.''

Francisco Orosco testified: ''While standing in the street I saw Isidoro Santiago with a machete attacking Cirilo from in front, and Sergio Rivera attacking him with a knife.'' Upon being questioned by a juror, he answered as follows:

''Q. What was Cirilo doing? A. Retreating. Q. Was he shielding himself? A. Yes, sir. Q. With what was he shielding himself? A. With his hands. Q. How far was the witness from the scene? A. About 20 meters.''

Isaac Vélez testified: ''On the day of the accident Cirilo Rivera was playing domino in a small kiosk that belongs to me. Víctor de la Paz then called him and said, 'Cirilo, Cirilo, Isidoro—Lolo, called Isidoro Santiago—wants you to go there' and the boy left, and a few minutes later he said to me: 'I'm going there,' and he went away, and four minutes more or less after he left I heard a disturbance and I looked out into the street and they were already carrying him wounded to the hospital.''

José Calderón Miró, owner of the Río Piedras ice plant, testified that Cirilo Rivera was his employee and that he had known him for twenty years as a hard working man, reliable and of a peaceful disposition.

After the above testimony, the prosecution rested. Defendant Santiago then took the stand and testified as follows:

''What happened there on February 12 was that while I was selling my wares in the market place, Ledesma sent Víctor de la Paz for me to go to the house to get some firewood and I went to Ledesma to buy the firewood. I went there and I bought the firewood . . . then I said to him: 'Víctor, go home, bring the small cart and take the firewood to my home. . .' I remained taking care of my business in the Río Piedras market. Shortly after, Víctor de la Paz came to me and said: 'Isidoro, they want you there, because Cirilo Rivera is there and he is mad'. . . I went home and found Cirilo in front of the door. . . He said to me: 'This firewood belongs to me and I am going to take it with me' and I said to him: 'Remember that

I have just bought this firewood from Ledesma'. . . When I told him 'remember I have just bought that firewood from Ledesma' he said to me 'I have nothing to do with Ledesma, it belongs to me and I am going to take it with me.' I had one foot on the step and the other on the ground, and he then tried to rush me, and as he was stronger than I. . . I went upstairs and in the doorway I found a machete, and I tried to defend myself. As he tried to get into the house I struck at him with the machete . . . and when I did so, he engaged me. . . On hearing somebody saying, 'What's the matter?'. . . I jumped up. . . Cirilo Rivera closed with Sergio Rivera. . . I don't know whether I wounded him because when he rushed me I struck at him with the flat of the blade.''

Sergio Rivera, the other defendant, also testified as follows: That he used to sell pork meat belonging to the other defendant, Santiago, which he carried in a large bowl, and that he used a knife for retailing the same. On his arrival he saw Cirilo and Santiago grappling with each other. He asked what was the matter and Cirilo released Santiago and rushed at him trying to snatch his knife in order to attack Santiago. They fought. He fell down and wounded Cirilo in the ribs with the knife.

Enrique Ledesma testified that he sold lumber from an old house to defendant Santiago, for twenty cents, and delivered it to a boy, Víctor de la Paz. He followed the boy and when passing in front of Pedro Rodríguez's store, where the deceased was, he heard when the latter said to the boy: ''I will give you $1.50 for that firewood'' and when Víctor answered: ''This wood belongs to Lolo, and I can't sell it.''

The district attorney then called the witness José Manuel Ortiz, who is ten years old, and a stepson of the deceased. He testified that he was walking with his father and that ''Ledesma told him that he would sell the firewood to father, and father asked him the price; Ledesma answered that for $1 and father offered 50 cents and Ledesma said: 'All right, take it for 50 cents' and father took out half a dollar and gave it to him.''

Such was, in short, the evidence on which the jury based its verdict.

Counsel for Isidoro Santiago maintains that such evidence was insufficient to convict the latter of the killing of Cirilo Rivera, because, at the most, it shows that it was he who inflicted on the deceased the wound in the hand, which was not the wound that caused the death; and that he did not conspire with Sergio Rivera, the other defendant.

His theory is that inasmuch as both defendants acted separately, without conspiring to kill Cirilo Rivera, each one is only liable for what he did. In support of his contention he cites 12 A.L.R. 280; *Givens* v. *State*, 62 So. 1020; *Scott* v. *State*, 163 Pac. 553; *State* v. *Reedy*, 127 S.E. 24, and *People* v. *Alvarez*, 37 P.R.R. 540.

We do not agree. The appellants were not charged with conspiracy but as principals to a murder, in accordance with section 36 of the Penal Code.

In the case of *People* v. *Márquez*, 45 P.R.R. 322, where both defendants were convicted of mayhem, this court said:

"We do not think that any essential error was committed. The defendants in arguing this assignment admit that if the information had charged that they had 'acted jointly' the instruction would be correct. This was not necessary. The information is sufficient to show that Márquez and Vázquez are charged as principals or co-authors of the act, equally responsible.

"Under our present system, all persons concerned in the commission of a crime (section 36 of the Penal Code) and who directly commit the act constituting the offense, or who, not being present, have advised and encouraged its commission, and all persons advising or encouraging minors under the age of fourteen years, lunatics or idiots, to commit any crime, or who by means of fraud, contrivance, or force, occasion the drunkenness of another person for the purpose of causing him to commit any crime, are principals in any crime so committed. Said system designates as accessories those who under the former system where known as *"encubridores."* The common purpose or concerted action to which the defense refers, is only required for certain crimes, such as that of conspiracy."

In *McCoy* v. *State*, 44 So. 814, the Supreme Court of Mississippi expressed itself as follows:

"But, coming to the specific proposition which the learned counsel for the defense in both these two cases presents, we find it to be this, in its last analysis: That nothing should have been permitted to go to the jury which was done by Jack Douglas at the time of the killing against Henry McCoy on his separate trial, and that nothing which was done by Henry McCoy at the time of the killing should have been permitted to go to the jury against Jack Douglas on his separate trial, for the reason that no conspiracy is shown to have existed between the parties. That is the first branch of defendant's contention. And, secondly, that, unless the evidence shows that there was such a conspiracy, then the state must be required to show by the evidence, before either can be convicted, that he himself killed El Russell. Now, we remark, first, in answer to the first branch of this contention, that everything done by either of these parties at the time they were upon the deceased, both stabbing him with some sharp instrument, was competent as part of the *res gestae*. The case of *Pulpus* v. *State*, 84 Miss. 49, 36 South. 190, is not at all in point here. Learned counsel for appellant misconceive the true purport of that case. The parties in that case, who had rabbit sticks in their hands, had nothing whatever to do with the killing. They did not participate in the killing in any way whatever, they were mere bystanders. Both these parties were on top of the deceased, and both stabbing him repeatedly with some sharp instrument, which manifestly produced his death. To hold in a case like this that what was done by one could not be proven by evidence in the trial of the other would be equivalent to holding that in such case neither could be convicted of murder at all, in the absence of proof of conspiracy. To state this is certainly to demonstrate its plain unsoundness. In 12 Cyc., at page 437, it is said: 'The declarations and acts of any participant in a crime, present at its commission, are competent against all then present. It is sometimes intimated that declarations uttered under such circumstances are received against the accused as the statement of a co-conspirator; but the true rule is that these declarations by one are admissible against all, under the rule in relation to *res gestae*.' This is unquestionably the true foundation of the competency of such testimony.

"Turning, now, to the second branch of the proposition—that neither of these defendants can be found guilty of manslaughter even, unless the state shall show beyond a reasonable doubt from

the evidence that that particular one did the killing—we observe, first, that we are satisfied that the jury would be well warranted in finding from the testimony in this case that both of these defendants inflicted fatal wounds; but, apart from this right of the jury so to find, it is not the law that neither could be convicted, as stated, unless the state could show that he, by his own independent act, did the killing. These parties were manifestly aiding and abetting each other in the commission of this homicide—both on him at the same time, both pursuing him for some distance at the same time, both jumping on him when he was down together, both stabbing him at the same time, until made to get up by William Mack and leave him. It must follow, 'as the night the day,' that each saw the other, each knew that the other was trying to kill the deceased, each struck in further- ance of a common purpose to kill, and, whether one killed or the other killed, both are guilty as principals under our statute, having aided and abetted each the act of the other.

"The principle we thus announce is abundantly supported by authority. In a strikingly similar case (*State* v. *White,* 138 N. C., at page 723, 51 S. E., at page 50), where two brothers had shot at the same time and killed a third person, and the same argument made here was made there, the court said: 'The suggestion that, if there be a reasonable doubt as to which one fired the fatal shot, both must be acquitted, cannot be sustained. The persons may have gone to the house without any purpose to kill or do unlawful violence. They had a common purpose, and when they drew their weapons they entered on that purpose unlawfully, and were so manifestly acting together, one in the aid of the other, that a killing by either under the facts of this case would inculpate both.' This is precisely the principle covering the case at bar. In *Regina* v. *Price et al.,* 8 Cox's Crim. Law Cases, 96, it was held, where six men assaulted another man, and one of the six inflicted a stab and killed the person as- saulted, and they were jointly indicted for murder, that: 'First, the man who stabbed was guilty of murder, whether he intended to kill or not; second, the other five would be guilty of murder if they participated in a common design to kill; third, if there was no common design to kill, if the knife was used in pursuance of a com- mon design to use it, they would all be guilty of murder; fourth, if there was no common design to use the knife, and if, being present at the moment of the stabbing, they assented and manifested their assent by assisting in the offense, they were guilty of murder.' The third and fourth points above fit in here perfectly. To the same effect are *State* v. *Prater,* 52 W. Va. 132, 43 S. E. 230; *Vasser* v.

*State*, 75 Ark. 373, 87 S. W. 635. In Wharton on Homicide (3d Ed.) at pages 49 and 50, it is said: 'Each person present, consenting to the commission of the offense and doing any act which is an ingredient in the crime, or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense. Aiding in the commission of a homicide makes the aider a principal. To render one criminally responsible as a principal in a homicide, it is not necessary that he should inflict the mortal wound. It is sufficient that he was present, doing or abetting the act; and this is so, though there was no common design to kill or injure.' "

The authorities cited by the appellants do not support their theory as applied to the facts in the instant case. Even though it were admitted that the only wound that defendant Santiago inflicted was that in the hand, still the evidence for the prosecution, which was the one that the jury believed, shows that Santiago, armed with a machete awaited the deceased and, when the latter arrived at the place, attacked and wounded him, and continued to attack him, whereupon the other defendant approached the deceased from behind and dealt him the fatal blow. A preconcerted design was not necessary. There was community of purpose in the malevolous intent of both defendants at the moment of the commission of the crime. What Sergio Rivera did was to join Santiago in the criminal act commenced by the latter. Both are liable for the murder committed.

■ As regards Sergio Rivera, his counsel claim that the verdict is contrary to the evidence and the law, as it does not appear from the evidence that there was any premeditation or deliberation on his part.

We do not agree either. When the defendant arrived, according to the evidence which the jury believed, he found the other defendant armed with a machete and assaulting the deceased, who, although physically stronger was unarmed and retreating. What did he do? Stealthily he stabbed him with his knife in the back, and killed him. His action was

swift, but it was deliberate and treacherous, thus containing the elements constituting the crime with which he was charged and of which he was convicted.

Our decision in the instant case is not inconsistent, of course, with the discretion of the jury, where several persons are charged with murder, to find one or several of them guilty of murder in the first or second degree and another or others guilty of manslaughter, in accordance with the doctrine laid down in *People* v. *Marrero,* 48 P.R.R. 875.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.